## STEPHENS vs. WESTWOOD.

1. A transcript from the books or papers on file in the General Land Office, or in the Indian Bureau of the Department of the Interior, if properly certified, under the seal of the department, by the "acting commissioner," is admissible in evidence.

2. After the location of an Indian reservee under the treaty of March 24, 1832, no valid entry of the land embraced in the reservation could be made; and consequently, a patent issued on such invalid entry, as against the reservee or those claiming under him, would be void.

3. If the location is proved by the Government records to have been regularly made, it cannot be collaterally impeached, even by one holding a patent from the United States.

4. In trespass to try titles, a verdict finding that "the land belongs to the plaintiff" will be held sufficient, on error, under the liberal rules of intendment, to support a judgment in favor of plaintiff for damages and costs, and the award of a writ of *habere facias possessionem*.

5. If no claim or suggestion for improvements is made by the pleadings, (Clay's Digest, p. 320, § 47,) the defendant cannot complain, on error, of the action of the court in refusing to allow him to offer evidence of the value of his improvements.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

TRESPASS TO TRY TITLES to a certain tract of land, between John Westwood and Theophilus Stephens, both of whom claimed under patents from the United States. At the January term, 1852, of the Supreme Court, a former judgment of the Circuit Court was reversed, and the cause remanded.— See 20 Ala. 275.

Another trial was had, as appears by the present record, at the Spring term, 1854, when the jury returned the following verdict : "We, the jury, find the land mentioned in the plaintiff's declaration belongs to the plaintiff ; and we further say, that we assess the damages sustained by the plaintiff at nine dollars"; and on this verdict the court rendered judgment against the defendant for the damages and costs of suit, and awarded a writ of *habere facias possessionem.*

It appears from the defendant's bill of exceptions, that the plaintiff, after proving the defendant's possession, the value of the rents, &c., offered in evidence a certified copy of an approved contract between Scehecharche, a Creek Indian reservee under the treaty of March 24, 1832, and Nat. Macon Thornton & Co., by which the said Scehecharche sold the land in controversy to the said Thornton & Co. ; which contract was assigned by said Thornton & Co. to G. E. Thomas & Co., by Thomas & Co. to Littleberry Moody, and by Moody to plaintiff. To this was attached the following certificate :

*"General Land Office, Sept.* 1, 1852.

" I, John Wilson, acting commissioner of the General Land Office, do hereby certify, that the foregoing are true copies of original papers on file in this office. In testimony whereof, I have hereunto subscribed my name, and caused the seal of the General Land Office to be affixed, this first day of September, 1852.     (Signed)

[L. S.]     JOHN WILSON, Acting Comm'r."

To the introduction of this evidence the defendant objected, but the court overruled the objection, and he excepted. The plaintiff then offered in evidence a certified transcript from the Department of the Interior, purporting to be an extract from a book of locations on file in that office, made by one of the United States locating agents, showing that Scehecharche was located by him on this land in 1834, as her reservation under the treaty. This transcript was certified by Charles Mix, as " acting Commissioner of Indian Affairs," to be a true copy of the original on file in his office ; and attached to his certificate was that of Robert McClelland, Secretary of the Interior, that said Mix was the acting Commissioner of Indian Affairs. The defendant also objected to the introduction of

this transcript, but his objection was overruled, and the transcript allowed to go to the jury; and the defendant excepted.

The plaintiff then read in evidence his patent from the United States, dated December 10, 1845, which recited that said Scehecharche became entitled to the said land as her reservation under the said treaty of March 24, 1832; that she had sold and conveyed to said Thornton & Co., by and with the approbation of the President of the United States; that Thornton & Co. had conveyed to Thomas & Co., who had conveyed to Moody, who had conveyed to Westwood.

The defendant then offered in evidence two patents from the United States; one, dated May 1, 1839, conveying a portion of the land to himself; and the other, dated April 5, 1837, conveying the other portion to William K. Stephens. Both of these patents recite, that the land was sold under the provisions of the act of Congress of April 24th, 1820. "Defendant then offered a witness to prove that no Indian had ever been located on the land in controversy; plaintiff objected; the court sustained the objection, and ruled out the evidence; and defendant excepted. Defendant also offered evidence of the value of improvements made by him on the land, and claimed to have them allowed him, because his possession had been adverse; which proof, on plaintiff's objection, the court excluded, and the defendant excepted. Defendant then offered a transcript from the Land Office at Montgomery, to show that no Indian had ever been located on said land; plaintiff objected; the court ruled out the evidence; and the defendant excepted." This transcript contains certified copies of entries made on the land by said William K. and Theophilus Stephens in 1835 and 1837, and the date of their patents, as above shown; and the register further certifies, that the west half of the section, which does not embrace any of the land in controversy, is marked on the maps in his office as an Indian reservation.

The errors assigned are, 1st, that the court erred as shown in the bill of exceptions; and, 2d, in rendering the final judgment, and awarding the writ of *habere facias possessionem* and costs against the defendant, upon the verdict shown in the judgment entry,—"said verdict not finding that the land belonged to the plaintiff at the commencement of the action,

and said declaration and verdict not authorizing said final judgment."

S. F. Rice, with whom was J. T. Brock, for appellant.

P. M. Allison and M. Andrews, *contra*.

CHILTON, C. J.—The United States, being the source of title, had the right to dispose of and issue a patent for the land in controversy according to law ; but having issued two patents to different claimants, the question is, to whom did it pass the title ?

The transcripts from the General Land Office and the Indian Bureau of the Department of the Interior were properly received in evidence, being copies of what appeared on file in those departments, properly certified under the seal of such departments by the proper officers.

These showed that the land in controversy was assigned to a Creek Indian as her reservation under the treaty, concluded at Washington between the United States and the Creek Tribe, of 24th March, 1832 ; that she sold according to the forms prescribed by the President of the United States, who approved the sale, and that by mesne tranfers her title became vested in the plaintiff (Westwood), to whom a patent issued. The patent to Stephens issued before that to Westwood, but upon entries made in the land office at Montgomery, of date subsequent to the location of the Indian.

Now, if the Indian was located by the proper authorities of the United States, and entitled to the land by virtue of the treaty above mentioned, the Government had no power to sell the land ; and consequently, no valid entry could be made of it, and a patent issued upon such entry would be void, as against the reservee, or those duly deriving title from her. The grant or patent to Stephens would be nugatory and worthless, for the reason, that the Government had no right to the land granted, having previously made a valid disposition of it.　See this case reported in 20 Ala. Rep. 278 ; Ladiga v. Rowland, 2 How. (U. S.) Rep. 581; Wilcox v. Jackson, 13 Peters 498 ; Crommelin v. Minter, 9 Ala. 594.

It is manifest from what we have said, that, in a controversy between those claiming under these conflicting patents, the

question of right must depend upon whether the Indian, under whom Westwood asserts a prior claim, was located upon the land or entitled to it under the treaty. He has shown that she was located and entitled, by the transcript from the locating agent's record of locations, properly certified, and which appears in evidence ; and upon this evidence, unimpeached, coupled with the patent and transfers and approved Indian's deed, the court would have been entirely justified in charging the jury, that the title was with the plaintiff,—that the patent to Stephens was void, the Government having made a valid disposition of the land ; and that the treaty under which such disposition was made, aside from the general law, expressly provided such lands should be reserved from sale, and authorized the reservee to dispose of ·them to any other person in such manner as the President might direct.

After a census was taken by the United States of the Creek Tribe, and the heads of families ascertained and designated ·upon the census roll, a copy of this roll, containing a list of the heads of Creek Indian families who were entitled to reservations under the treaty, was furnished to the locating agents, and they were instructed by the proper department to proceed and designate, opposite the name of each Indian entitled to a reservation, the particular tract to which he or she ·was entitled, including the improvement of each reservee in his selection, if the same could be done ; and if not, then that the Indians who could not be so located should take in one body of a proper form. This designation of the land opposite the name of the Indian upon the rolls of the locating agents, which were forwarded to Washington and filed in the public archives, constituted "the location." The questions whether the Indian was the head of a family, and entitled under the treaty to the particular tract set apart for her, have been decided by the officers of the Government, and are not subject to be revised in this collateral way. It would be a shocking perversion of the spirit of the treaty, to require the reservee, whose claim, after repeated investigations by the several Government officers, has been fully recognized and confirmed by the United States, to prove her right to a location, or that she was actually placed in possession of the land allotted to her. The United States proceeded, in the fulfil-

ment of the obligations imposed by the treaty; in a manner peculiar to itself, and adapted to the condition of this half-civilized people. The Government was not bound down by the strict rules of the common law, in receiving proof of their being heads of families, and entitled under the treaty to locations; but acting as a sovereign, and desirous of carrying out the treaty in good faith, it was proper that a liberal policy should be adopted. The testimony of Indians was received; the chiefs of the respective Indian towns were generally consulted, and their reports were generally accredited, as indeed they were found in most cases to be very reliable, and their rights, in many instances, depended wholly upon the testimony of their people. Our courts, however, receive no such proof, and to subject them now to the maintenance of those rights according to the forms which our law prescribes, we should exclude the evidence upon which alone the Government acted, in many cases, and thereby defeat their claims, which were not only guarantied by solemn treaty stipulation, but recognized and sanctioned by the Government itself. We can never consent to minister to such bad faith to the reservees and those claiming under them.

In our opinion, the action of the Government, in ascertaining the heads of families, and setting apart their lands, or locating them, as we have above shown locations were made, when returned by the respective Government officers, and confirmed by the department entrusted with the matter by law, becomes final, and no one has a right to put the reservee upon proof, other than that furnished by the Government records, of her right to the land set apart opposite her name as her reservation. It follows, therefore, that the offer in the court below to show that this reservee was not located, when the Government record shows that she was, is an attempt to impeach collaterally the Government record, and was properly disallowed. If, in designating the sections or fractions of sections reserved from sale, the officers of the General Land Office failed to mark this land as reserved, whereby the Land Office at Montgomery, Ala., permitted it to be entered, this mistake should not be allowed to prejudice the claim of the Indian reservee, or those claiming under her. The party thus making the entry must look to a just Government for repara-

tion, and cannot be allowed to defeat a prior (and therefore a better) right which had vested in another.  It follows from what we have said, that there was no error in excluding from the jury the certificate of the register of the Land Office at Montgomery.

As to the verdict :  It is not very formal, but it is general ; and under the liberal rules of intendment which apply in such cases, we are of opinion that it fully warrants the judgment, *which must be affirmed.*

No claim or suggestion for the improvements was made by the pleadings, and it is needless, therefore, to notice this subject further.—Clay's Dig., p. 320, § 47; *ib.* 336, §§ 134-5.

Judgment affirmed.