# Elliott *v.* Stocks & Bro.

### *Trial of the Right of Property.*

1. *Removal of cases from State to United States courts; when may be made.* An affidavit and bond, for the removal of a cause from a State court into the United States court, is filed in time, although the case has been twice continued by the consent of the party seeking to remove it.

2. *Same.*—A petition and affidavit, filed under the act of congress of March, 1867, to remove a cause from the courts of this State into the United States courts, which shows that the petitioner is a resident of another State, but fails to show that the opposing party is a citizen of Alabama, is fatally defective, and it is not error to refuse a motion for removal.

3. *Trial of the right of property; evidence as to the character of defendant's possession admissible.*—On the trial of the right of property between attaching creditors and a claimant, the creditors must prove that the property in controversy belonged to the defendant, in attachment, at the time of the levy, and, for this purpose, they may trace the title from the original owner to the defendant, and may show the character of the actual possession to disprove the authority of one actually in possession to convey or assign the property to the claimant, and, in such a case, any evidence as to the authority of the person in actual possession to convey the property, or as to the consideration of the conveyance, and its amount, is admissible.

Vol. LXVII.

4. *Bona fides of the debt; to be proved by the claimant.*—If the property is held by the claimant, as a trustee for creditors, under a deed, it is also incumbent on him to show the existence and *bona fides* of the secured debts.

5. *Power of attorney; contents proved, when original beyond jurisdiction.*—Secondary evidence of the contents of a power of attorney, is admissible, when the original is shown to be beyond the jurisdiction of the court.

6. *Collective facts; witness may testify to.*—A witness may state collective facts, as that "—— had no right to convey the property;" "—— did not own it," etc.; and the adverse party may, on cross-examination, bring out the facts on which the witness rests his conclusions.

APPEAL from Cherokee Circuit Court.

Tried before Hon. W. L. WHITLOCK.

On the 19th of July, 1875, Stocks & Bro., through John T. Stocks, a member of the firm, took out an attachment against H. D. Cothran, Thomas McCulloch, Robert Marshall, and W. S. McElwain, on the ground that they were non-residents of the State of Alabama. This attachment was levied on one hundred tons of pig iron, at the Cornwall Furnace, in Cherokee county. On the 6th of August, 1875, James M. Elliott, as trustee, interposed a claim to the property, executing a claim bond, and stating, in the affidavit, that the iron was not the property of Cothran and others, but of affiant, as trustee. On the 7th of March, 1876, Stocks & Bro. filed their complaint in the Circuit Court of Cherokee county, against Cothran and others. The complaint contained a count for money had and received, one for money paid and expended, a special one for work and labor done, and coal furnished to defendants, and a special count "averring that the defendants, in consideration of their advantage and interest, did, upon trust, undertake to operate the Cornwall Iron Works, its property and materials, in making iron, and with a purpose, on their part, fixed thereby and thereafter, to work themselves, by means of said property, into the ultimate ownership of said works, its property and materials, and thus operated the same, and the defendants, being so operating said works, its property and materials, did accept and receive of the defendants labor, and coal furnished by them, to the use and benefit of the defendants, in furtherance of their said operations, to the value of $2,018.00. In consideration of the premises, the defendants promised, undertook, and assumed to pay the plaintiffs said amount of money, when requested, due at the dates and in sums following : $348.00 October 10, 1874 ; $430.00 April 30, 1875 ; $540.00 June 3, 1875 ; and $700.00 July 3, 1875. Yet the defendants have not paid the same, or any part thereof, though often requested so to do, and the same is still due, with interest thereon." The case was continued, by consent, at the Fall Term, 1875, and at the Spring Term, 1876,

it was again continued by the defendants. On the 6th day
of September, 1876, James M. Elliott made an affidavit be-
fore the Clerk of the Circuit Court, stating therein that he
was a citizen of the State of Georgia then, and at and be-
fore the 19th of July, 1875 ; that he was the person who, as
trustee, had filed his bond for the trial of the right of prop-
erty levied on under the attachment against Cothran and
others ; that the amount in controversy exceeded the sum of
five hundred dollars, exclusive of costs ; that he had reason
to, and did believe, that, from prejudice and local influence,
he would not be able to obtain justice in the Circuit Court
of Cherokee county, Ala. ; and that he made the affidavit
with the view and for the purpose of having said cause re-
moved into the Circuit Court of the United States, to be
held in that district. He, also, at the same time, presented
his petition for removing the case into the United States
Court. This petition stated that he was, and is a citizen of
Georgia ; set out the issuance of the attachment, the levy,
the interposition of the claim, the pendency of the suit, the
amount in controversy, the filing of the affidavit for removal,
and the reason given therefor ; offered bond for removal, and
prayed, as trustee, the removal of the cause into the United
States Circuit Court. The bond having been adjudged in-
sufficient by the court, a new one was filed by Elliott. The
plaintiff demurred to the petition, because it was not filed
before or at the term when the cause could first have been
tried. The court sustained the demurrer and refused the
petition. On the trial, an issue between the plaintiffs and
Elliott, the claimant, was made up under the direction of the
court, but it does not appear in the record. The plaintiffs
introduced, without objection, their attachment and the
sheriff's return showing the levy. They then offered in evi-
dence a mortgage made on January 21, 1871, by the Corn-
wall Iron Works to Chas. H. Smith, as trustee, for the
Tredegar Iron Company. In this mortgage it is recited that
the Cornwall Company agreed to deliver to the Tredegar Com-
pany a specified quantity of iron, and the latter company, in
consideration thereof, agreed to furnish the Cornwall Com-
pany with an acceptance for $10,000, and also bonds of the
city of Rome to the amount of $17,000. The Cornwall Com-
pany then conveyed, by the same instrument, to Chas. H.
Smith, in trust, 2,423 acres of land, and all the personal prop-
erty used and employed at the iron works, for the purpose
of securing the loan made by the Tredegar Company. The
deed provided for the payment of certain portions of the
loan at specified times, and for the manner in which the iron
furnished to the Tredegar Company should be credited on the

debt.  It also contains stipulations as to insuring the property for the benefit of the Tredegar Company and directions as to how the funds should be applied in case of sale of the property by the trustee, under the power given him for that purpose, in case of default in payment.  Plaintiff then offered in evidence a written contract signed by H. D. Cothran, Thomas McCulloch and Robert Marshall, as principals, and R. T. Foreche, as trustee, and assented to by Chas. H. Smith, as trustee for the Tredegar Company.  This agreement was made on January 1, 1874, and recites that at a sale of the Cornwall Iron Works property, it was "bid in" by H. D. Cothran at $66,000, with a view of operating the works by the consent of the creditors who held liens to that amount, for the benefit of such creditors and until their debts were paid, and securing for himself the ultimate ownership of the property. That Robert Marshall claims a lien for purchase-money on the land ; that Thomas McCulloch was a stockholder in the company to the extent of an undivided fourth interest in the property.  It is then agreed that for the purpose of harmonizing conflicting interests and preventing litigation, H. D. Cothran should operate the works, and remain in possession, and control the earnings and products subject to the trusts named, i. e.:  1. To pay the costs of the sale.  2. To deliver to the Tredegar Company one-half the iron manufactured, to be applied on the debt due them.  3. To pay the vendor's lien due Robert Marshall, and directing the time and manner of its payment.  The agreement then recognized other claims against the property, and among them is one for $2,000 due to Stocks and Young for coal, and one for $4,000 for labor.  After payment of these debts, it is provided that the property shall belong to Cothran, McCulloch, Marshall and W. S. McElwain, in certain proportions.  The claimant objected to the introduction of this agreement on the ground that it was irrelevant, and because the defendant McElwain was no party to it.  The court overruled the objection, and the claimant excepted.  Thomas McCulloch was then called as a witness and testified that he and H. D. Cothran signed the contract referred to above, and that he as attorney in fact, signed Robert Marshall's name thereto. That he had a written power of attorney to sign the contract in the name of Robert Marshall ; that the power was in Rome, in the State of Georgia.  The claimant objected to any statement by the witness about the signature of Marshall to the contract, on the ground that the answer was not legal testimony.  The court overruled the objection, and the claimant excepted.  The plaintiff then offered to read the

[Elliott v. Stocks & Bro.]

contract to the jury, to which the claimant objected. The court overruled the objection, and the claimant excepted.

Plaintiffs then offered a copy of an agreement between H. D. Cothran and W. S. McElwain, which was dated December 19, 1874, under which the latter was to receive possession of the iron works and property, and manage and control the same, under the terms, and on the trusts contained in the agreement between Cothran, McCulloch and Marshall. This change was ratified in writing by Charles H. Smith, as trustee for the Tredegar Company. Thomas McCulloch, one of the defendants, then testified, that the original agreement was lost; that it had been abstracted from his possession; and that he had searched for it, where he last saw it, and had failed to find it where he had kept it; that the copy offered in evidence was a *verbatim* copy of the original. The claimant objected to the copy of the agreement. The court overruled the objection, and the claimant excepted. The plaintiffs offered to read the agreement to the jury, but the claimant objected to his doing so. Thereupon the court overruled the objection and the claimant excepted. The plaintiff then offered in evidence, a letter dated January 2, 1875, purporting to be from H. D. Cothran, with a memorandum at the bottom, purporting to have been signed by Wallace S. McElwain, and addressed to Thos. McCulloch. In this letter it is stated, that " the change you refer to, amounts to W. S. McElwain's assuming the authority as superintendent, to dispose of the products of the furnace, which I as agent have held heretofore. The furnace property belongs to H. D. Cothran & Company, as per agreement signed by you and I. The contracts and agreements made by H. D. Cothran, agent, are all to be carried out by W. S. McElwain, superintendent. The object in delegating the authority heretofore held by H. D. Cothran to W. S. McElwain, superintendent, was that Messrs. Printup and Hargrove would probably assist us, if such a change was made, when they would not help us if I retained the management. Mr. McElwain will show you the agreement. Yours truly, H. D. Cothran. The foregoing statement is correct—W. S. McElwain." Thos. McCulloch testified for plaintiffs, that the signatures to said letter were in the handwriting of Cothran and McElwain, with which he was acquainted, and that he had received it through the mail. The claimant objected to the letter as evidence. The court overruled the objection, and the claimant excepted. The plaintiffs offered to read the letter to the jury, but the claimant objected. The court overruled the objection, and the claimant excepted. The plaintiffs then introduced John T. Stocks, one of the plaintiffs, who testified that he received

[Elliott v. Stocks & Bro.]

a letter dated at Rome, Ga., July 14, 1875, from James M. Elliott, and that the signature was in the handwriting of Elliott. This letter was as follows: " I have had a conversation with Col. Printup since I arrived here about your claim. He requested me to write you, that he would see to it, that you should be protected, that he knew how to manage so you could get your claim in the way I mentioned, that is, on a mortgage that he controls. From what he tells me, I think you may rest easy ; I will see to it that you are paid, as long as I have any control of the iron, say from the 10th of this month forward. J. M. Elliott." Plaintiffs then offered to read this letter to the jury, to which claimant objected, on the ground that it was irrelevant, and because this letter was written by Elliott, as an individual, and not as trustee for Printup Bros. & Co., but only on a conversation with D. S. Printup, a member of this firm. The court overruled the objection and the claimant excepted. Thos. McCulloch then testified, that at the sale of Cornwall Iron Works by Chas. H. Smith, as trustee in the deed of trust, in favor of the Tredegar Company, that H. D. Cothran, as agent, became the purchaser, but the money was never paid ; Cothran went into possession of the property as agent, under the contract between him, Thos. McCulloch and Robt. Marshall. That afterwards W. S. McElwain went into possession of said works, as superintendent, under said Cothran as agent, in said Cothran's stead, as said agent, and operated the works. Plaintiff then asked the witness if the iron which was being made at the works was the property of McElwain. The claimant objected to the question, but the court overruled the objection, and the claimant excepted. Plaintiffs then asked the witness whether or not the iron as it ran, or issued, from the furnace at Cornwall Iron Works was the property of Wallace S. McElwain. The claimant objected, but the court overruled the objection, and the claimant excepted. The witness then stated, that the iron was not the property of W. S. McElwain. Claimant moved to exclude the answer from the jury, but the court overruled the motion, and claimant excepted. J. T. Stocks, one of the plaintiffs, was then re-called as a witness, and testified that iron was worth $25 per ton in Rome, Ga., and it was worth in Cherokee county $23 per ton. The claimant offered to read to the jury the deposition of Daniel S. Printup, in answer to interrogatories filed to him. The 6th interrogatory was as follows : " If you know of any other fact or facts, tending to prove that Exhibit No. 1, hereinbefore referred to, which will tend to the fairness and justice, and legality of claimant's claim, you will tell each and every such fact or facts as fully as if you were directly in-

terrogated as to each of said facts." The answer was, "I knew that the account attached to the interrogatories is a just and *bona fide* one, and that the same in justice and law ought to be paid." The first cross-interrogatory was as follows: " What sum would you or D. S. Printup Bros. & Co. give, if plaintiffs fail in this suit?"

The answer was, "I, as an individual, would not be benefited in any way by the result of this suit. Printup Bros. may, or may not be benefited to some extent. J. M. Elliott, trustee, made advances to McElwain after July 9, 1875, for the purpose of making iron at the said Cornwall works, and it was understood that all their advances were to be paid to said Elliott, trustee, and he claims that said advances will more than cover the value of said iron."

The third interrogatory was, " Is it not true that before and after July 13, 1875, you refused to honor drafts on McElwain?" The answer was, " I, as well as Printup Bros. & Co., did refuse to honor drafts on McElwain until he gave us assurance that iron would be delivered to meet such drafts, or that he would arrange them through some other means. We did accept, and pay drafts on us by McElwain, upon condition that iron was delivered, or to be delivered to meet and pay the same. These drafts were drawn for supplies to run said works, and make iron." The plaintiffs objected to these answers, the court sustained the objection, and the claimant excepted to each ruling of the court thereon. From the deposition of said witness, it appeared that he resided in Rome, Ga., that W. S. McElwain was engaged in making iron at the Cornwall Furnace, in Cherokee county, Alabama, from April 1875, to July 9, 1875. An account due from McElwain to Printup Bros. & Co. was attached to the interrogatories which the witness stated was just, true and unpaid, and was made by McElwain. It amounted to $13,749.07, and was for supplies to operate the iron works, it being understood that it was advanced on iron manufactured by him at said furnace. That Printup Bros. & Co. furnished nearly, if not all the means to enable McElwain to make iron, The remainder of the deposition was in answer to cross-interrogatories as to the items of the account due by McElwain to Printup Bros. & Co. A witness, Brown, the bookkeeper of Printup Bros. & Co. testified as to the correctness of the account due Printup Bros. & Co., and stated that he had presented it to McElwain, who had admitted its correctness. The claimant then offered in evidence a promissory note for $21,402.28 on July 13, 1875, a deed of trust executed by W. S. McElwain to James M. Elliott as trustee for Printup Bros. & Co., in which, after reciting the indebtedness of McElwain to Printup Bros. & Co.,

[Elliott v. Stocks & Bro.]

said McElwain conveyed the personal property on the premises known as the Cornwall Iron Works property, and all the products of the works, consisting of pig iron, including also, all the coal, wood, ore and materials on hand, to James M. Elliott in trust, to sell the same upon default. The trust deed was in the usual form. The claimant introduced G. Hampton, the deputy sheriff who levied the attachment, who testified that at the time he made the levies, the Cornwall Works were in the possession of McElwain, and were being operated by him; that he levied on some of the iron while hot, and just as it ran from the furnace. A statement made by Elliott was then introduced by agreement, as his testimony in the case. The material parts of it were as follows : " That the iron attached was not the property of H. D. Cothran, Thos. McCulloch, Robt. Marshall and W. S. McElwain, but was his property, as trustee, under the deed of trust from McElwain to him, made to secure the debt of Printup Bros. & Co. That Printup Bros. & Co. advanced the money to McElwain to make the iron, and when made, it was to be taken and held by him as such trustee, in accordance with the deed of trust. That Elliott would prove, if present, that Printup Bros. & Co. furnished McElwain money which was used in making the iron levied on ; that the note mentioned in the trust deed was executed to Printup Bros. & Co. for supplies furnished by them to carry on the iron works and make iron ; that the iron attached and claimed by Elliott is part of the iron so made by McElwain ; that McElwain was the lessee of the iron works, and controlled the same when the iron was made, and that Cothran, McCulloch and Marshall had nothing to do with the works when the iron was made. Plaintiff, in rebuttal, introduced Thos. McCulloch, and asked him whether the property conveyed by McElwain to Elliott was the property of McElwain. The claimant objected to the question, the court overruled the objection and claimant excepted. The witness then stated that the property did not belong to McElwain, and that he had no right to convey it. There was a judgment by default on proof of publication, against Cothran, Marshall and McCulloch, and "a jury and verdict against W. S. McElwain." There was a judgment in the claim suit, condemning the property attached to the satisfaction of the plaintiff's claim. The claimant brings the case to this court, and assigns as error, the rulings of the court on the removal of the case into the U. S. Court, and on the evidence.

WATTS & SONS, for appellant.—Under the act of Congress the appellant, on the allegation of his petition, had the right to have the case transferred to the United States Court, and

[Elliott v. Stocks & Bro.]

it was error to refuse it.—See Rev. Statutes of U. S. on page 113, § 639. The petitioner had the right to file this petition, at any time before the trial. The questions asked the witness McCulloch, as to the ownership of the property, called for the opinion of the witness, and the answers were improper for the same reason.—*Wall v. Williams*, 11 Ala. 826; *Bullock v. Wilson*, 5 Porter, 338.

The answer of Printup is in response to the question propounded, and there was no objection to the question.—*Yarborough v. Hood*, 13 Ala. 176; *Wilkinson v. Mosely*, 30 Ala. 562. His answer to the first cross-interrogatory was responsive to it, and it was error to exclude it from the jury. His answer to the third cross-interrogatory was but a response to it, there was nothing illegal in it, and it should have gone to the jury. The witness had the right to explain his refusal to honor the drafts. Without this explanation the answer would not have told the whole truth, and great injustice would have been done the witness, and the claimant. The court had no right to exclude any part of this answer. *Crymes v. White*, 37 Ala. 549.

WALDEN & SON, and BRAGG & THORINGTON, for appellee.—The affidavit made by appellant for the removal of the cause is deficient, because it does not show the citizenship of the appellees. This was as necessary under the act of Congress as the statement of the citizenship of the defendant. Nor was the petition filed in the proper time, for there had been two continuances of the cause.—*Ex parte Grimball*, 61 Ala. 589; Dillon Rem. of Causes, 25. The letter from Cothran to McCulloch was properly admitted to explain McElwaine's possession of the iron works. The letter from Elliott to Stocks was admissible to show notice of Stocks & Bro.'s claim. Ownership is a fact to which a witness may testify.—*Chenault v. Walters*, 14 Ala. 151; *Martin v. Linton*, 18 Ala. 690; 11 Ala. 826; 5 Port. 338; 1 Ala. 632; 10 Ala. 460; 27 Ala. 651. Printup's answers to the sixth direct, and to the first and third interrogatories, were properly excluded. The authorities cited by appellant give no sanction to such answers.

STONE, J.—The question which meets us at the threshold of this case is, did the Circuit Court err in refusing to remove the claim suit, or trial of the right of property, to the Circuit Court of the United States? The application was made under the act of Congress, approved March 2d, 1867, which is in the following language: "That when a suit may hereafter be brought in any State court, in which there is

controversy between a citizen of the State in which the suit is brought and a citizen of another State, such citizen of another State, whether he be plaintiff or defendant, if he will make and file, in such State court, an affidavit, stating that he has reason to, and does believe, that from prejudice or local influence he will not be able to obtain justice in such State court, may, at any time before the final hearing or trial of the suit, file a petition in the State court for the removal of the suit into the next Circuit Court of the United States," &c. Under the various rulings which have been made under this statute, the appellant made and filed his affidavit in time, and in the matter of giving bond, conformed to all the statute required, if the affidavit be sufficient.—U. S. Rev. Stat. § 639 ; *Ins. Co. v. Dunn*, 17 Wallace, 214 ; *Railroad Co. v. McKinley*, 99 U. S. 147 ; Removal Cases, 100 U. S. 457 ; *Bible Society v. Grove*, 101 U. S. 610 ; *Mining Co. v. Woods*, 8 Amer. Rep. 799 ; *W. U. Tel. Co. v. Dickinson*, 13 *Ib.* 295 ; *N. Y. Warehouse Co. v. Loomis*, 23 *Ib.* 272. There is, however, a fatal defect in the petition and affidavit for removal, which is not supplied or remedied by any part of the record on file at the time the application was made and overruled. It sufficiently shows that Elliott, the petitioner, was a resident of the State of Georgia. It fails to show that Stocks & Bro., or either of them, was a resident of the State of Alabama. The Circuit Court did not err in overruling the motion for removal.

It was necessary for plaintiffs to prove, in the trial of this case, that the property in controversy belonged to the defendants in attachment, and to disprove, if necessary, any asserted or assumed right in McElwain to convey it. Elliott's claim and right rested alone on McElwain's conveyance, and any legal testimony offered tending to disprove his authority to execute the trust deed, could not be ground of error. The title to the iron-works property, real and personal, appears to have been, at one time, in the Cornwall Iron Works Company. It was allowable to plaintiffs to prove that fact, and to trace the title and ownership through its various stages, down to the defendants in attachment. It was also permissible to prove the nature of McElwain's possession, and, by doing so, to disprove his authority to make a trust deed, assigning the property, and the products of the Iron Works. Each and all of the documents offered in evidence in this cause, tended to show either the ownership of the property in the defendants in attachment, or the nature and extent of McElwain's possession, and power over the property.

There were, at least, two important questions which were necessarily and prominently raised by the issue in this cause.

First. Whether there was a *bona fide* debt, and the amount of it, to uphold the deed in trust from McElwain to Elliott, trustee. Second. Whether McElwain had any, and what authority to make that conveyance? In considering these questions, we must ignore all extraneous claims and interests. If the Tredegar Iron works, or Smith, or Foreche, trustees, have any claim to the property in controversy, it is not shown in this record, and, in fact, could not have been, for they are strangers to the record. Both the plaintiffs in attachment, Stocks & Bro., and the claimant, Elliott, rest their respective claims on the original ownership of McElwain, and the other defendants in attachment. Stocks and brother claim as attaching creditors of the former defendants in attachment; and Elliott claims as trustee under the trust deed made by McElwain to him in trust for the benefit of Printup Bros. & Co. So that neither party can derive any benefit in this issue from any claim of the Tredegar Iron Works, or its trustees may assert. The plaintiffs, to maintain their suit, must establish the ownership of defendants in attachment, when the attachment was levied. The claimant, to succeed, must show McElwain's right to convey, and actual conveyance by him, before the attachment was levied, and the existence of a debt unsatisfied, secured by the trust deed. Any legal evidence, tending to prove either of these propositions, was admissible. It will not do to say, in reply to this, that the documentary evidence showed McElwain was without authority to bind the other defendants. He was one of the defendants himself, claimed to be part owner of the property, and whether or not he could convey his own interest in the property described in the trust deed, it would, perhaps, be improper for us to determine in the present state of this record.

The question raised on the admissibility of secondary evidence, of the contents of the written power under which McCullough executed the contract for Marshall, will not, probably, arise again, should this case return to the Circuit Court. Coming up as the question does, with proof before the court, that the power of attorney was in the State of Georgia, beyond the jurisdiction of the court, this authorized secondary evidence of its contents.—1 Whar. Ev. § 130, and note 6; 1 Greenl. Ev. § 558; *Shorter v. Sheppard*, 33 Ala. 648; *Scott v. Rivers*, 1 St. & Por. 19.

In suppressing the answer of the witness, Printup, to the 6th interrogatory in chief, and to the first and third cross-interrogatories, the Circuit Court erred. They were reasonably responsive and explanatory of the subject called for in the interrogatories, and tended to prove the existence of the

debt on which Elliott's claim was founded. That being a necessary part of the issue formed, we are unable to say what influence such testimony might have exerted.

Many objections were urged to answers of the witness McCullough. We think none of them are well taken. They were but the statement of collective facts, which, as a rule, witnesses may depose to. If the claimant desired to know the foundation on which the witness rested his conclusions of fact, he should have interrogated him on that subject. *S. N. Railroad v. McLendon*, 63 Ala. 266.

The judgment of the Circuit Court is reversed, and the cause remanded.