# Woodstock Iron Co. v. Roberts.

## Statutory Action in nature of Ejectment.

1. *Certified copy of patent from land office.*—Under statutory provisions, a copy of a patent for lands issued by the United States may be certified by the "acting commissioner" of the General Land Office (Code, § 2787); and such certified copy is admissible as evidence without producing or accounting for the absence of the patent itself. (Overruling *Jones v. Walker*, 47 Ala. 175, as to the last point.)

2. *Infancy as exception to statute of limitations.*—By statute (Code, § 2624), an infant is allowed three years after attaining his majority, within which to bring suit, or make entry; but his disability is not allowed, in any case, to extend the period of limitations beyond the lapse of twenty years from the accrual of his right of action or entry; this being a statutory affirmation, as applicable to infants, of the doctrine of proscription.

3. *Adverse possession, under permissive possessor.*—A permissive possession does not become adverse, without an open and distinct disavowal of the title of the true owner, and the assertion of a hostile title brought to his notice; but, if the permissive possessor dies in possession, and the land is afterwards sold by his administrator for the payment of debts, a deed executed to the purchaser purporting to convey the entire estate in the land, the purchase-money paid, and possession delivered, such possession is adverse to the true owner, and will ripen into a title if continued for the statutory period.

4. *Continuity of possession, as affected by trespass.*—The intrusion of a mere trespasser on land, who enters without claim or title, does not interrupt the continuity of possession, unless continued so long that knowledge by him is presumed, and he fails to resort to legal remedies before adverse rights are acquired.

5. *Actual and constructive possession.*—Possession under title, or color of title, is not limited to that part of the land which is actually occupied, but extends to the entire tract covered by the written instru-

[Woodstock Iron Co. v. Roberts.]

ment; while the possession of a trespasser, without color of title, extends only to the land actually occupied.

6. *To what witness may testify.*—A witness may testify that a person went into the possession of lands "and thereafter *controlled* them;" this being merely the statement of a collective fact.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. JOHN B. TALLY.

This action was brought by Marshall Alexander (now Roberts) against the Woodstock Iron Company, and the Anniston City Land Company, private corporations, to recover the possession of a large tract of land containing more than eight hundred acres; and was commenced on the 13th of May, 1887. The plaintiff was the only child and heir of Marshall J. Alexander, who died on the 12th of September, 1862, and she claimed the land in that capacity; while the defendants claimed as sub-purchasers under persons who had bought the several parcels of the tract, at a sale made by the administrator of the estate of Samuel P. Hudson, deceased, during the year 1866. The defendants pleaded the general issue, and the statutes of limitation of ten and twenty years; and the trial was had on issue joined on these pleas. On the trial, the defendants reserved numerous exceptions to the rulings of the court on the admissibility of evidence, and in the matter of charges given and refused; and these rulings, twenty in number, are now separately assigned as error. The opinion of this court renders unnecessary a statement of these rulings in detail.

KNOX & BOWIE, and CALDWELL & JOHNSTON, for appellant.

BROTHERS, WILLETT & WILLETT, *contra.*

CLOPTON, J.—Transcripts of patents to portions of the land sued for, authenticated by the certificate of the "Acting Commissioner of the General Land Office," were received in evidence, against the objection of defendant. The grounds of objection are, that an acting commissioner is not authorized by law to make such certificate, and that the absence of the original patents was not accounted for. The certificate itself does not appear in the record, and we must assume, in favor of the ruling of the court, that it was in due and proper form. Under the statute which declares that "the certificate of the head of any bureau or department of the general gov-

ernment is a sufficient authentication of any paper or document appertaining to his office," which now constitutes section 2787 of Code, 1886, it was held in *Stephens v. Westwood*, 25 Ala. 716, that a transcript from the books or papers on file in the General Land Office, if properly certified under the seal of the department by the acting commissioner, is admissible in evidence. That case is decisive of the first ground of objection. In *Hines v. Greenlee*, 3 Ala. 73, it was held, that a certified copy of a patent by the commissioner of the General Land Office was receivable in evidence, without attempting in any manner to account for the absence of the original. The decision is based on the principle, that the record of the patent, being required by law, is a public act, and therefore a public document; a duly certified transcript of which is of as high authority, and has the same effect, as the original. Inconsistent with this principle is the ruling in *Jones v. Walker*, 47 Ala. 175, where it was said, that a certified transcript of a deed by the commissioner of the General Land Office is only admissible as secondary evidence, after notice to produce the original. Notice in such case would be useless. The party has not, and is not entitled to possession of the original, and can not be reasonably required to produce an original paper, which is required by law to be kept on file in a department of the government. We reaffirm the ruling in *Hines v. Greenlee*, and *Jones v. Walker* is overruled in this respect.

The plaintiff derives title to the lands as the only child and heir of Marshall J. Alexander, to whom they were sold and conveyed by James A. McCampbell, by deed dated January 18, 1855. The defendant may assail the genuineness of the deed, the *factum*, and date of its execution; but, its execution being proved, it is valid as between the parties, and vests a title in the grantee, valid as to all persons except purchasers from McCampbell and his creditors. The execution of the deed does not appear to be seriously controverted, though the circumstances may be somewhat suspicious. The jury found in favor of its execution, and we shall therefore assume its genuineness. The patents issued to McCampbell, the deed to Alexander, and the proof of the heirship of plaintiff, establish the legal title to be in her, which entitles her, *prima facie*, to maintain the action. The defendant does not pretend to claim title from McCampbell or Alexander. The real defense is adverse possession under color of title, for a sufficient time to defeat the plaintiff's right of

action. Whether or not Alexander had actual possession of the lands, is unimportant; he had the legal title, which gave the right, and drew the possession. On the presentation of the case, as made by the record, all issues, except the issue joined on the plea of the statute of limitations, become immaterial. The case will be simplified, and the confusion of immaterial issues avoided, if the inquiry is solely directed to this issue. In our view of the case, we shall limit the consideration to the principles underlying the material and decisive issue, upon which the rights of the parties must ultimately depend.

The plaintiff's father died September 12, 1862; she was born May 31, 1863, and the suit was commenced May 13, 1887. Immediately on the death of an ancestor, his lands descend to his heirs, who are entitled to possession, unless intercepted by the exercise of the statutory authority of the personal representative. The heirs can successfully maintain ejectment against any person in possession, claiming to hold adversely, except the widow or the personal representative of the deceased, though the widow's dower has not been allotted or assigned. Until allotted, she has no legal estate or interest in any specific part of the land, and her right to an assignment of dower does not suspend the heirs' right of action.—*Rives v. Brooks*, 80 Ala. 26; *Turnipseed v. Fitzpatrick*, 75 Ala. 297.

The plaintiff's cause of action accrued as soon as there was any person in the adverse possession of the lands, claiming by independent right. Section 2624 of Code, 1886, provides, if any one entitled to bring suit, or make entry, is, at the time the cause of action or right of entry accrues, a minor, or under other legal disability, he shall have three years after the termination of such disability, in which to bring suit or make entry. This general provision is, however, qualified by the further express provision: "But no disability shall extend the period of limitation, so as to allow such action to be commenced, or entry or defense made, after the lapse of twenty years from the time the cause of action or right accrued." This is a statutory affirmation of the doctrine of prescription, which is so extensive in its scope and operation, that proof of no disability whatever arrests or rebuts the presumption.—*McCartney v. Bone*, 40 Ala. 536; *Garrett v. Garrett*, 69 Ala; 429; *Harrison v. Heflin*, 54 Ala. 552; *Matthews v. McDade*, 72 Ala. 377. Governed by the same policy of security and repose to society, and the neces-

[Woodstock Iro n Co. v. Roberts.]

sity of quieting litigation, on which the doctrine of prescrip-
tion is founded, the statute of limitations prohibits any legal
disability to extend the period of limitation beyond twenty
years.

It is contended, that the possession of Samuel P. Hudson,
under whom the defendant claims, and who, it appears, had
been some time prior, and was at the time of his death, in
possession, was permissive in its inception; and that it could
not become adverse, without a distinct and open disavowal
of the title of the true owner, and the assertion of a hostile
title brought to her notice.    Such is the settled rule.    Had
Hudson lived, his possession, if permissive, could not have
become adverse without such disavowal and assertion.    But
a possession, however rightfully it may originate, may be
converted into a possession hostile and adverse.    It appears
that, after his death, his administrator sold the lands as the
property of his estate, in March, 1866, at which sale different
parcels were purchased by different parties.    The sales were
reported and confirmed by the Probate Court, and, on pay-
ment of the purchase-money, conveyances were made to the
purchasers, respectively, under order of the court.    It is ad-
mitted that the proceedings in the Probate Court, and the
conveyances of the administrator, were sufficient to invest
the purchasers with all the right, title and interest which
Hudson had at the time of his death.    There is evidence
tending to show that the purchasers went into possession
immediately after the sale, and that they and those to whom
they sold and conveyed, and their sub-vendees, have been in
possession ever since.    On this question, however, there is a
conflict of evidence.    The defendant derives title by *mesne*
conveyances from the purchasers at the administrator's sale.

If a purchaser of land, under an executory contract, sells
and conveys to a third person for a valuable consideration,
which is paid, and places him in possession, under a convey-
ance which is claimed and asserted to pass the entire estate,
and under which such third person claims to hold, his pos-
session is adverse to the original vendor, though the first
purchaser had not paid the purchase-money, nor received a
conveyance.— *Walker v. Crawford*, 70 Ala. 567; *Beard v.
Ryan*, 78 Ala. 37.    If, after the death of Hudson, his ad-
ministrator sold the entire estate in the lands, and on pay-
ment of the purchase-money executed conveyances to the
purchasers, asserting that they passed the entire estate, such
conveyances constituted color of title, and were inconsistent

VOL. LXXXVII.

[Woodstock Iron Co. v. Roberts.]

with, and antagonistic to the title of plaintiff; and if the purchasers were placed in possession under such color of title, their possession became hostile and adverse.

It is well settled that possession, in order to ripen into a title, and bar an entry by the true owner, must not only be open, notorious, and adverse, but also continuous for the statutory period. There being some evidence tending to show that the possession was interrupted, defendant, in order to meet this aspect of the evidence, requested the court to instruct the jury, that the entry of a mere intruder, or trespasser, who enters upon land without claim or title, would not interrupt the continuity of defendant's possession. The charge states the rule too broadly. Some courts hold, that a fraudulent or wrongful entry operates to break the continuity of possession, so as to defeat the operation of the statute of limitations. This doctrine is qualified by our decisions. The rule, as settled in this State, is, that the unknown intrusion of mere trespassers will not interrupt the continuity, unless continued for such length of time that knowledge of the intrusion is presumed, or so as to become assertions of adverse rights. If they are known, they become adverse assertions of right, and operate to break the continuity, unless legal remedies are resorted to in a reasonable time to regain possession, and prosecuted to a successful termination.—*Beard v. Ryan, supra; Bell v. Denson,* 56 Ala. 444; *Farmer v. Eslava,* 11 Ala. 1028.

The defendant's possession, being under color of title, is not limited to the lands actually occupied, but extends to the contiguous lands, embraced in the color of title. The possession of a trespasser, without color of title, is confined to his actual occupancy. There being several parcels of land, the intrusion of a mere trespasser would not break the continuity of defendant's possession, except as to that portion of the land actually occupied by such trespasser.

We should remark that the charge requested by defendant, on the effect of the proceedings in the Probate Court, and the sales by the administrator of Hudson, is defective, for the reason, that it omits from its hypothesis the continuity of the possession for the statutory period.

It was competent for the witness Skelton to testify that the defendant went into the possession of the lands "and thereafter *controlled* them." Control is a statement of collective facts, involving management and acts of ownership. If the plaintiff desired to know on what the witness founded

his conclusion of facts, he should have drawn it out on cross-examination. When the character of the possession is in issue, it can not be proved by general reputation, nor by the opinion of individuals as to the actual condition of the property, as was held in *Benje v. Creagh*, 21 Ala. 151. But control of property is not the opinion of the witness; it is his conclusion of facts—a collective statement.—*Turnley v. Hanna*, 82 Ala. 139; *Elliott v. Stocks*, 67 Ala. 290.

For the error in excluding the testimony of the witness, the judgment must be reversed, as we can not assume that it was without injury.

Reversed and remanded.