# Ryan *v.* Kilpatrick.

### *Statutory · Real Action in nature of Ejectment.*

1. *Adverse possession without color of title; effect and extent of.*—Continuous adverse possession of land for ten years, exclusive of the period during which the statute of limitations was suspended on account of the war, under claim of right, though without title or color of title, "is equivalent to a legal title, on which an action of·ejectment may be either maintained or defended"; but the right thus acquired, depending on actual possession, extends only to the lands actually occupied, and draws to it no constructive possession.

2. *Same, under color of title*—Adverse possession under color of title is not limited to the precise quantity actually cultivated or occupied, but extends to the boundaries of the·entire tract·conveyed by the instrument which consti-tutes such color of title, except such portions thereof as are otherwise actually possessed ; and defects in the title of the grantor, or a want of title in him, will not prevent the instrument from giving color of title.

3. *Bill of exceptions; when not suppressed.*—A bill of exceptions, duly signed by the presiding judge, will not be suppressed, or struck from the record on motion, because it is therein stated that, before the signing and sealing thereof, one of the defendant's attorneys, to whom it was submitted for examination, " objected to the signing and sealing of the same, because it was not also submitted to the defendant's other attorneys"; and that the presiding judge, "in overruling said objection, and signing and sealing said bill of exceptions, does so without prejudice to the right of defendant's attorneys to urge such objection in the appellate court." ·

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. LOUIS WYETH.

This action was brought by Samuel. F. Ryan, against Columbus Kilpatrick and Arthur C. Beard, to recover the possession of a tract of land, which was described in the amended complaint as the " north-west part (B) of fractional section seventeen (17), township seven (7), range four (4), east, containing seventy-nine (79) acres, more or less," with damages during its detention; and was commenced on the 18th December, 1876. Beard died during the suit, and the action was thereupon revived against his personal representa-tives and heirs, who defended the suit, Kilpatrick being in possession as the tenant of Beard. The defendants pleaded, in short by consent, the statutes of limitation of ten and twenty years, and adverse possession for three years with a suggestion of the ·erection of valuable improvements; and the cause was tried on issue joined on these pleas.

On the trial, a bill of exceptions was reserved by the defendant, which was signed by the presiding judge after the adjournment of the court for the term. The bill of

exceptions itself states that it was so signed by agreement, and refers to the agreement as if incorporated; and there is a paper attached to the transcript, containing an agreement as to the testimony of an absent witness, omitted from the transcript, as the clerk certifies, "because then mislaid and only recently found," and in this paper is copied what purports to be an agreement, signed by the attorneys of both parties, that the bill of exceptions might be signed after the adjournment, "said bill being first submitted to defendant's attorneys." The bill of exceptions contains the following recitals: "And now, before the signing and sealing of this bill of exceptions, R. K. Boyd, one of the defendant's attorneys, objects to the signing and sealing of the same, because he says that the alleged bill of exceptions was not submitted to two of the defendant's attorneys in this case, to-wit, S. D. Cabaniss and W. J. Haralson, but only to himself; and the undersigned, in overruling said objection, and signing and sealing this bill of exceptions, does so without prejudice to the rights of defendant's attorneys to urge such objection in the appellate court"; signed by the presiding judge. On these facts, a motion was made to suppress the bill of exceptions.

On the trial, as the bill of exceptions shows, it was proved that the land in controversy was conveyed by patent from the United States, on the 20th May, 1831, to Hardy H. Moore, who was the brother of Beard's wife, and under whom Beard claimed by purchase, having paid the purchase-money, but never received a conveyance; while the plaintiff claimed under Gabriel M. Moore, who was a brother of said Hardy H. Moore. The plaintiff first read in evidence, without objection, a deed executed by said Gabriel M. Moore, dated the 9th March, 1850, by which he conveyed a tract of land, together with negroes and other property, to Samuel Finley and P. M. Bush as trustees, in trust for his wife and children, with remainder to his children. In this deed the land was described thus: "Those certain tracts or parcels of land lying and being in said county of Marshall, purchased by him of William Robinson and P. M. Bush, and comprising the plantation on which the said Gabriel now resides, and containing about ten hundred and thirty-five acres, be the same more or less." There was no proof that the land here sued for was a part of the tract conveyed by this deed; the plaintiff's evidence being confined to proof of possession, claiming it as a part of said tract, or without reference to the deed. Gabriel M. Moore died in 1853, leaving his widow and two infant children surviving him. In 1854, his widow married John Ryan, by whom she afterwards had one child,

[Ryan v. Kilpatrick.]

the plaintiff in this suit, who attained his majority in July, 1876. She died in 1857, and her two children by her first husband died a few months previously, in infancy. Evidence was introduced, on the part of the plaintiff, tending to show that said Gabriel M. Moore went into possession of the land in controversy in 1848, on his purchase of the plantation from Robinson and Bush, and continued to cultivate that part which was cleared until his death in 1853, but subject to the control of the trustees after the execution of his deed to them; that the trustees leased the plantation, for several years, to one Jolley, who also cultivated the cleared portion of the land in controversy; and that John Ryan, after his marriage with the widow of said Gabriel Moore, occupied and cultivated the lands until 1872, when his tenant abandoned them, and a tenant took possession under Beard, who had notified Ryan's tenant that he claimed the land. John Ryan testified, as a witness for the plaintiff, among other things, as follows: "Witness did not know whether the land sued for in this action formed a part of the body of land conveyed by said Gabriel M. Moore to Finley and Bush as trustees, but did know that said Jolley, lessee of said Finley and Bush, occupied and cultivated, under said lease, the particular tract of land here sued for, up to and including the year 1856, when witness was placed, by said trustees, in possession of all the lands conveyed by said deed, including the tract involved in this present controversy. Witness intermarried, in June, 1854, with Mrs. Joanna Moore, the widow of said Gabriel M. Moore; and plaintiff is the only issue of that marriage. Said Gabriel M. Moore left two infant children surviving him, William and Mary Moore, who were his only heirs at law, and both of whom died intestate, and without issue, prior to January, 1857, leaving said plaintiff as their only surviving heir; and the mother of plaintiff, said Joanna, died in the fall of 1857, or thereabouts. In the latter part of the year 1856, said trustees placed witness in the actual possession of the lands conveyed by said deed, and witness received said lands, including the tract sued for in this action, and went into possession thereof under said trustees, and continued to remain in the possession thereof, quietly and peaceably, without being disturbed in the possession thereof, using and cultivating said lands, and claiming title thereto as the property of said William and Mary Moore during their lives, and after their death as the property of plaintiff, said S. F. Ryan, as heir at law of said William and Mary Moore, continuously, from the latter part of the year 1856, up to the latter part of the year 1872, when said Arthur C. Beard, without the knowledge or consent of witness, or of

[Ryan v. Kilpatrick.]

said plaintiff, placed a tenant in possession of the land sued
for. When said land was so delivered to witness by said
trustees, he did not then certainly know that the tract sued
for in this action was included in, and formed a part of the
main body of said lands conveyed by said deed, but it was
in fact delivered to him by said trustees, and received by him
as a part of the lands conveyed by said deed; and witness
took possession, and continued in the possession of said land,
believing the same to form a part of the lands conveyed by
said deed, and paid taxes on said land during all the while
after he went into possession, up to the commencement of
this suit, and either cultivated said land on his own account,
or leased it out, under the belief that it formed part of the
main body of said lands conveyed by said deed. During all
the time while witness was so occupying and cultivating said
land now in suit, and during the occupancy of the same by
said Gabriel M. Moore, by said trustees, and by said Jolley,
said Arthur C. Beard resided in said county, within seven or
eight miles of said land, and actually knew, all the while, of
the occupancy, acts of ownership, and claim of witness in
and to said land; and never at any time, up to the latter part
of the year 1872, set up any title, claim or estate in or to said
land, so far as witness knows or believes."

It was admitted that P. M. Bush, one of the trustees in
the deed executed by Gabriel M. Moore, and who was a half-
brother of the said Gabriel and Hardy H. Moore, would
testify, if present, as a witness for the defendants, that the
land sued for was not included in the tract conveyed by him
and William Robinson to said Gabriel M. Moore, and after-
wards conveyed by said Moore to Finley and Bush as
trustees; "that he never held nor claimed possession of
said land in controversy under the said deed, nor did the said
Finley, the other trustee; and that for a number of years,
while he was in possession of said plantation, he rented said
land in controversy from Arthur C. Beard, and paid him rent
for it"; and that Beard bought said land from Hardy H.
Moore, prior to 1835, and paid for it. There was other
evidence in the case, introduced by each party, but a further
statement of it is unnecessary.

The plaintiff requested the court, in writing, to charge the
jury, "that the deed executed by Gabriel M. Moore, to Finley
and Bush as trustees, is sufficient to create a color of title in
the trustees, and in the plaintiff in this suit, whether said
Moore had title or not"; "which charge the court refused to
give, because the plaintiff in this case claims as the heir of
the said Gabriel M. Moore, and therefore the deed from
Gabriel M. Moore cannot give color of title either to him or

his heirs.". The plaintiff excepted to the refusal of this charge, and also to the refusal of another charge, which is numbered 2, but which is in the same words as the first; and the refusal of these charges is now assigned as error.

RICE & WILEY, for appellant, cited *Howell v. Hair*, 15 Ala. 194; *Jones v. Jones*, 18 Ala. 253; *Herbert v. Huie*, 1 Ala. 21; *Sherrod v. Rhodes*, 5 Ala. 693; *Hair v. Little*, 28 Ala. 249.

CABANISS & WARD, *contra.*—Color of title "is that which in appearance is title, but which in reality is no title."—Tyler on Ejectment, 872. Hence, to constitute color of title, the deed must identify the land.—*Jackson v. Camp*, 1 Cowen, 605; *Jackson v. Woodruff*, 1 Cowen, 286. The reason given for the refusal of the charge is immaterial, if the charge itself was not correct.

STONE, J.—Neither plaintiff nor defendant in this action traced title from the Government to himself. The Government patent was issued to Hardy H. Moore, and neither contending litigant traces title out of him. The plaintiff's claim is as follows: His testimony tends to show, that Gabriel Moore went into possession of the lands in controversy in 1848, and continued in possession, exercising acts of ownership, until March, 1850, when he conveyed the lands to Finley and Bush, trustees, in trust for his (Moore's) wife and children, remainder to his children. Moore continued to occupy the lands, although controlled by the trustees, until his death in 1853. He left his widow and two infant children surviving him. In 1854, Mrs. Moore intermarried with John Ryan, father of the plaintiff, who then took up his residence on the premises. One only child, the plaintiff, was the issue of the second marriage, who attained his majority in 1876, and soon afterwards commenced this suit. Mrs. Ryan, the mother, died in 1857, and her two children by Moore died in infancy, leaving no lineal descendants. The trustees continued to control and lease out the lands, in obedience to the directions of the trust deed, until 1856 or 1857, after the death of Mrs. Ryan and her two children by Moore. After that, Ryan, the second husband, controlled and leased out the lands, in the right and interest of his infant son, until 1872. His possession was open and notorious, and was known to Arthur Beard, in whose right the present defendants claim. In 1872, the tenant placed in possession by Ryan, moved off the premises, and Beard then took possession, without Ryan's leave, and continued in possession, claiming title. The tract of land in controversy contains about seventy-nine acres, of

which about one half was cleared and cultivated. The testimony tends to show the cleared land was actually occupied and cultivated—a *pedis possessio*—during all the time. The other half was unreclaimed, or woodland, of which there was no actual occupancy.

Two questions arise on this testimony. *First*, was there a continuous, actual occupancy of the premises, independently and under claim of right, for ten years before Beard took possession. Of course, this means ten years exclusive of the four years, eight months and ten days, during which the statute was suspended on account of the war. If there was such independent holding under claim of right, then such adverse holding is equivalent to a legal title, on which an action of ejectment may be maintained or defended. And neither title, nor color of title, is necessary to perfect this right.—*Smith v. Roberts*, 62 Ala. 83, and authorities cited; *Dillingham v. Brown*, 38 Ala. 311; *Steele v. Steele*, 64 Ala. 438. This right, however, depending on actual possession—*pedis possessio*, as it is sometimes phrased—extends only to the lands actually occupied. It draws to it no constructive possession.—Ang. on Lim. §§ 391–4.

The second question is, when the possession is taken or held under title, or color of title. In this class of cases, the occupancy of the claimant is not limited to the precise quantity actually possessed by him. It embraces all the contiguous land, not otherwise possessed, conveyed in the title or color of title under which he enters or claims.—Ang. on Lim. § 400; Tyler on Ejectment, 895.

There can be no question that the deed from Gabriel Moore to Finley and Bush, trustees, no matter how defective Moore's title may have been, constituted color of title in his grantees, and in those claiming and occupying under them. *Riggs v. Fuller*, 54 Ala. 141; *Ladd v. Dubroca*, 61 Ala. 25; *Molton v. Henderson*, 62 Ala. 428; *Dillingham v. Brown*, 38 Ala. 311.

It is thus shown that the deed of Gabriel Moore was an important factor, in defining the extent of the adverse holding asserted and claimed by plaintiff, and those under whom he claimed. The charges asked ought to have been given; because they assert a correct principle of law, and were justified by the state of the evidence. The presiding judge gave as a reason for refusing the first charge asked, "that the plaintiff in this case claims as the heir of the said Gabriel M. Moore, and therefore the deed from Gabriel M. Moore can not give, either to him or his heirs, color of title." We suppose the presiding judge was misled by the remark of the witness John Ryan, father of plaintiff, that he "never took

[Williams v. Baldridge.]

possession of, or claimed said lands so conveyed, as his own, but only as the property of the estate of Gabriel M. Moore and his heirs at law, and after their death held possession of the same as the property of said plaintiff, who was a minor up to July, 1876, and whose father said witness is." This witness has previously testified, that he went into possession of said lands in 1856, and remained in quiet and peaceable possession, "using and cultivating said lands and claiming title thereto as the property of said William and Mary Moore" [children of said Gabriel M.], "during their lives, and after their deaths as the property of said plaintiff, Samuel F. Ryan, as heir at law of said William and Mary Moore, continuously from the latter part of the year 1856, up to the latter part of the year 1872." Now, no part of this language justifies the assumption, that plaintiff claims in this suit as the heir of Gabriel M. Moore; and if it did, it is only the testimony of a witness. The right in which plaintiff claims must be determined by the evidence he offers in support of his title. Tested thus, he claimed as heir at law of William and Mary Moore, who claimed under the deed of their father.

The motion to suppress the bill of exceptions can not be entertained.—*Weir v. Hoss*, 6 Ala. 881; *Hollingsworth v. Chapman*, 50 Ala. 23.

Reversed and remanded.