# Harris *v.* Moore.

## *Bill in Equity by Creditor, to set aside Fraudulent Conveyances.*

1. *Parties to bill.*—When a creditor at large files a bill to reach and subject lands alleged to have been fraudulently conveyed by his debtor (Code, § 3886), the debtor himself, if living, is a necessary party defendant to the bill; and if he obtains a discharge in bankruptcy pending the suit, his assignee is a necessary party defendant.

2. *Testimony taken before cause is at issue.*—Testimony taken in a chancery cause before the cause is at issue as to a material defendant, is not admissible as evidence against him for any purpose.

3. *Suits by foreign executors or administrators.*—Under the statutes which were of force in 1867 (Rev. Code, §§ 2293-94), a foreign executor or administrator on the estate of a person who, at the time of his death, was not an inhabitant of this State, but had property here, was not authorized to maintain a suit here, if letters testamentary or of administration had been granted here; and under the law as since amended (Code, §§ 2637-38), while he is authorized to maintain suits and recover property here, on compliance with prescribed conditions, notwithstanding the prior appointment of a domestic administrator, the statute expressly declares that, "before a judgment is rendered in his favor, he shall prove to the court that he has complied in all respects with these conditions, and, failing to do so, can not recover."

4. *Same.*—In a suit brought by such foreign executor or administrator without a compliance with these statutory conditions, his bill being dismissed by the chancellor on other grounds, although his right to maintain the suit was denied by special plea; this court is bound to affirm the decree, although the statute of limitations has since barred a recovery by the domestic administrator.

[Harris v. Moore.]

APPEALS from the Chancery Court of Madison.
Heard before the Hon. N. S. GRAHAM.

L. P. WALKER, and CABANISS & WARD, for appellant.—The
chancellor dismissed these bills on three several grounds : 1st,
that the jurisdiction of the court could not be sustained under
the act of 1877 (Code, § 2637), because the bills were filed be-
fore the passage of that statute ; 2d, that the jurisdiction of the
court in Tennessee, by which the complainant's letters were
granted, was not proved ; 3d, that the execution and indorse-
ment of the notes, on which the suits were founded, was not
proved. In each of these positions, the appellant contends that
the chancellor erred. (1.) The act of 1877 contains an express
provision, making it applicable to suits then pending ; and this
feature is not obnoxious to any constitutional provision.—*Page
v. Matthews*, 40 Ala. 547 ; *Peevey v. Cabaniss*, 70 Ala. 253.
For analogous decisions, see cases cited in 1st Brick. Digest,
364, § 59 ; 365, § 73 ; 371, § 158 ; 373, § 175. (2.) The grant
of letters in Tennessee was certified as required by the act of
Congress of 1790, and was entitled to the same credit and ef-
fect in Alabama as in Tennessee.—*Hampton v. McConnell*,
3 Wheaton, 234 ; *Slaughter v. Cunningham*, 24 Ala. 260 ; *Gunn
v. Howell*, 27 Ala. 663. (3.) The original notes were produced,
and, their execution not being denied by sworn plea, no other
proof was necessary.—Code, § 3036 ; *Bonner v. Young*, 68 Ala.
35. (4.) The demurrer to the bill, for not alleging that there
was no resident administrator, was properly overruled.—*Cloud
v. Golightly*, 5 Ala. 654. The case last cited answers the argu-
ment, that complainant failed to prove a compliance with our
statutory provisions, as required by section 2638 of the Code.
Proof of such compliance was not required by the appellees,
nor was its absence noticed by the chancellor ; and the objec-
tion ought not to prevail in this court, to prevent a reversal,
after a recovery by the domestic administrator has been barred
by the statute of limitations.

JNO. D. BRANDON, *contra.*—(1.) The demurrer to the bills
raised the question of the jurisdiction of the court, and was
well taken. It is a fundamental rule of equity pleading, that
the bill must state a case within the appropriate jurisdiction of
the court.—*Chase v. Palmer*, 25 Maine, 341 ; *Hay v. Parker*,
12 Pick. 34 ; *Stephenson v. Davis*, 36 Maine, 73 ; Story's Eq.
Pl. §§ 241, 257, 260-61 ; Mitford & Tyler's Pl. Eq. 246-48,
Amer. ed. 1876 ; *McDonald v. Insurance Co.*, 56 Ala. 470.
(2.) Complainant sues by virtue of letters of administration
granted by the County Court of Davidson county, Tennessee,
and alleges in her bill that said court had jurisdiction "to grant

[Harris v. Moore.]

letters testamentary;" and there is no proof of the laws of
Tennessee, though defendants denied and demanded proof.
As to this matter, the allegations and proof are equally defect-
ive.—*Gunn v. Howell*, 27 Ala. 663; *Woodward v. Donally*,
27 Ala. 198; *Cockrell v. Gurley*, 26 Ala. 405; *Bradley v.
Northern Bank*, 60 Ala. 252; *Minniece v. Jeter*, 65 Ala. 222;
*McDonald v. Insurance Co.*, 56 Ala. 470; 1 Greenl. Ev. § 480;
2 Brick. Dig. 330, § 3.    (3.) There was no proof that the notes
were executed by W. H. Moore, and indorsed by the payees to
Harris; and these were material averments, and should have
been proved.—*McLane & Plowman v. Riddle*, 19 Ala. 180;
*McKinley v. Irvine*, 13 Ala. 681.    (4.) There was no decree
*pro confesso* against Moore before his bankruptcy, and none
was taken against his assignee; nor was there such a decree
against Bankhead.    The cause was, therefore, not at issue.
Rules Ch. Pr., Nos. 30, 33, 52; *McIntosh v. Atkinson*, 63 Ala.
241; *McGehee v. Lehman, Durr & Co.*, 65 Ala. 315.    (5.)
Moore's discharge in bankruptcy was pleaded and proved, and
the debts sued on were barred.—Bump on Bankruptcy, 518,
524; *Nat. Bank v. Olcott*, 46 N. Y. 12; *Miller v. McKenzie*,.
20 Amer. Rep. 111.    The bills should have been dismissed,
because filed within less than four months before Moore's peti-
tion in bankruptcy was filed.—U. S. Rev. Stat. § 5044; 8 Bank.
Reg. 473, 495; 31 Md. 478; 22 Wallace, 394.    (6.) When these
bills were filed, there was no law authorizing them, because
there was a resident administrator already appointed in Ala-
bama; and the point was presented by plea, regularly filed,
after the demurrer was overruled.    After the causes had been
submitted for decision, and while they were under considera-
tion by the chancellor, the act of February 5th, 1877, now
forming section 2637 of the Code was passed; and in it was
incorporated a special provision covering these cases, and de-
claring that they should not be "abated, barred, or affected,"
by the grant of administration here before the bills were filed.
This feature of the statute, it is insisted, is an unwarranted in-
terference with vested rights, and a clear usurpation of judi-
cial functions by the legislative department.    A right to sue is
the very foundation of jurisdiction; and while the legislature
may cure irregularities in existing proceedings, it can not con-·
fer jurisdiction where none existed at the commencement of the
suit.    It is the duty and prerogative of the General Assembly
to determine what the law shall be in future—to law down·
new rules for the regulation of future controversies; but its
resolves can not be made to retroact upon past or pending con-
troversies, so as to create a liability or remedy in the particular
case which did not exist before.    The courts must determine
pending causes by existing laws, and the legislature has no·

[Harris v. Moore.]

power to define their *status*, or to interfere between the parties, so as to confer a right of action, or impose a liability, where none existed at the commencement of the action.—Cooley's Const. Lim. 369, 371, 94; 1 Bla. Com. 44; *McDaniel v. Carroll*, 19 Illinois, 228; *Denny v. Mattoon*, 2 Allen, 361; *Walpole v. Elliott*, 18 Indiana, 259; *Nelson v. Roundtree*, 23 Wis. 367; *Griffin v. Cunningham*, 20 Grat. 109; *Richards v. Rote*, 68 Penn. St. 248; *State v. Doherty*, 60 Maine, 504; *Steele v. Steele*, 64 Ala. 438; *State v. Fleming*, 7 Humph. 152; *Burt v. Williams*, 24 Ark. 91; *Jackson v. Phelps*, 3 Caines, N. Y. 69; *Calder v. Bull*, 3 Dallas, 386; *Greenough v. Greenough*, 11 Penn. 489; *Taylor v. Place*, 4 R. I. 324; *Merrill v. Sherburne*, 1 N. H. 199; *Lewis v. Webb*, 3 Greenl. 140; *Bates v. Kimball*, 2 Chip. 77; *Holden v. James*, 11 Mass. 396; *Carleton v. Goodwin*, 41 Ala. 153; *Insurance Co. v. Boykin*, 38 Ala. 513; *Sanders v. Cabaniss*, 43 Ala. 173; *Weaver v. Lapsley*, 43 Ala. 224; *Wharton v. Cunningham*, 46 Ala. 590; *Pryor v. Downey*, 19 Amer. Rep. 656; *State v. Tappan*, 9 *Ib.* 622; *Yancey v. Yancey*, 5 Heisk. 365. (7.) Even if the act of 1877 can be made to apply to these cases, so as to cure the original want of jurisdiction, the bills were nevertheless properly dismissed, because the complainant failed to make proof of her compliance with its provisions; and therefore, in the imperative words of the statute (Code, § 2638), she "can not recover."

STONE, J.—These causes, which are identical in their main features, were long pending in the Chancery Court. The bills were filed in 1867, and the decrees were rendered in June, 1881, dismissing the bills. The chancellor, in his opinion, points out certain alleged imperfections in the preparation of the causes, and adds, "there are other irregularities."

According to the averments of the bills and the proof, William H. Moore became largely indebted to Benjamin D. Harris, a resident of the State of Tennessee. Harris died intestate, and Letitia J. Harris was appointed and qualified as his administratrix in the State of Tennessee. She brought these suits, as such administratrix, and in virtue of that appointment, under section 3886 of the Code of 1876. She sues as a creditor at large and without a lien, and seeks to subject to the payment of her claims certain real estate, alleged to have been conveyed by Wm. H. Moore with intent to defraud his creditors. The conveyances were to his children, and recited large indebtedness as the consideration. When these bills were filed, the children, grantees in said deeds, were all infants under twenty-one years of age. William H. Moore, the debtor and maker of the notes, was made a party defendant, and was a necessary party.

[Harris v. Moore.]

Very soon after the bills were filed, Wm. H. Moore became a voluntary bankrupt, and H. L. Clay was appointed his assignee. At the June term, 1868, of the Chancery Court, the following minute-entry was made:

"Letitia J. Harris, adm'r,    ⎫   Came the parties by their solic-
               v.             ⎬   itors, and comes also into open
William H. Moore *et al.*      ⎭   court Hugh L. Clay, assignee in
bankruptcy of respondent, William H. Moore; and by his consent this suit is revived [against] him as such assignee."

At the December term, 1875, William H. Moore filed his plea of discharge in bankruptcy, accompanied by a copy of the certificate of discharge, which shows that it was granted October 27, 1870. This is the only pleading by Wm. H. Moore found in the record; and no decree *pro confesso* was taken against him.

On the 27th January, 1877, there was filed in the register's office the written admission of complainant's counsel that Wm. H. Moore had received his certificate of discharge in bankruptcy on 27th October, 1870. The record contains no answer or other pleading by Hugh L. Clay, the assignee, nor were any decrees *pro confesso* taken against him.

Much of the testimony of complainant was taken in 1868, and the parties continued to take testimony, at intervals, up to 1879.

It can not be gainsaid, that Wm. H. Moore, until he became an adjudged bankrupt, was a necessary party; and that any testimony taken before that time, without first putting the cause at issue with him, if any testimony was so taken, was irregular; and such testimony can not be looked to, as proving anything.—Rule 51, Ch. Practice. It is equally clear that, after said Moore was adjudged a bankrupt, and Hugh L. Clay was appointed his assignee, he became a necessary party, and testimony could not be lawfully taken in the cause, until it was put at issue with him. The result is, that none of the parol testimony taken in the cause, was lawfully taken, and the averments of the bill are unsustained by proof legally taken. But we do not decide the causes on this ground.

Benjamin D. Harris, the intestate, as we have shown, was a resident of the State of Tennessee, at the time of his death. Letitia J. Harris, the complainant in these suits, became his domiciliary administratrix, and she brought these suits in that right. When these suits were commenced (in 1867), there was a resident administrator of said estate, appointed by the Probate Court of Madison county, Alabama, and discharging the duties of the trust. Our statute (Rev. Code, § 2293) then provided, that "any executor, or administrator, who has obtained letters testamentary, or of administration, on the estate

[Harris v. Moore.]

of a person who was not, at the time of his death, an inhabitant of this State, in any other of the United States (no letters testamentary or of administration having been granted in this State), may maintain suits, and recover or receive property in this State," on certain specified conditions. Letters of administration having been previously granted in this State, it is manifest this statute did not authorize the bringing of these suits.

So the law remained until 1877,—nearly ten years afterwards. A statute was then enacted, which became and is section 2637 of the Code of 1876. This was intended to so vary the former law, as to allow suits brought as these were to be prosecuted to judgment, whether brought before or after the enactment of the statute. The validity of the retroactive feature of this statute is claimed to be supported by *Page v. Mathews*, 40 Ala. 547 (limited in *Carleton v. Goodwin*, 41 Ala. 153); *Peevey v. Cabanis*, 70 Ala. 253. The latter statute, however, did not repeal section 2294 of the Revised Code, which is retained, and constitutes section 2638 of the Code of 1876. That section declares, " It is necessary that the plaintiff, before a judgment is rendered, should prove to the court that he has complied in all respects with the provisions of the preceding section, and, failing so to do, he can not recover." Among the provisions of the preceding section, it is enacted that such administrator of another State, suing in this, must record in this State a copy of the letter of administration, and give bond. Neither of these things is shown to have been done in this case. And section 2637 of the Code of 1876 permits an executor or administrator of foreign appointment to maintain suits, and recover or receive property in this State, only when he has previously recorded his letter of appointment and given bond; which fact he must prove to the court before he can recover.—Code of 1876, § 2638.

It is contended for appellant, that the failure of the present records to affirm these statutory requirements were complied with, can not become a question in this court. *Cloud v. Golightly*, 5 Ala. 653, is relied on in support of this argument. That case arose and was decided under the act of 1821, found in Clay's Digest, 227, § 31. The act of 1821, though in many respects similar to the provisions of the Revised Code on the same subject, is in phraseology somewhat different. The requirements of the old law were, that unless the letters testamentary, or of administration, were recorded in the proper county, and a certificate thereof produced before judgment rendered, " the court may direct a non-suit to be entered." In the case of *Cloud v. Golightly* (*supra*), the suit was by a foreign administrator, and the plaintiff had judgment in the court be-

low. There was no plea of *ne unques* administrator, but there was simply a demurrer to the declaration. The record did not show that plaintiff, who claimed judgment by virtue of his foreign appointment, had complied with the requirements of the act of 1821 in such cases. The main error relied on was the failure of the record to show such compliance affirmatively. This court, after ruling that the defense insisted on should have been raised by special plea, laid down the rule in a case like that, as follows: "The court in which the foreign executor or administrator sues, may, of its own motion, require the production of the letters testamentary, &c.; and should, when its production is insisted on by the defendant, require it before judgment. But the omission of the record to show whether such a requisition had been made or insisted on, is not an error affecting the regularity of the proceedings." Let it be remembered that, in that case, the judgment of the court below was for the plaintiff; and it was not shown that the failure of the plaintiff to record the letters of administration before judgment was rendered, was brought to the notice of the court. It could not be raised on demurrer, for it was not required to be done before suit brought. The effect of the ruling was, that such question could not be raised in this court, unless "the defendant had appeared in court, and insisted that the plaintiff should entitle himself to judgment, by producing the evidence of his representative character; when the court would have been bound to act, and its refusal would have been fatal to the judgment."

The present statute is different. Its language (§ 2638) is: "It is necessary that the plaintiff, before a judgment is rendered, should prove to the court that he has complied in all respects with the provisions of the preceding section, and, failing so to do, he can not recover." The chancellor dismissed these bills, and the records fail to show the plaintiff had complied with the provisions of that section—2637. Counsel concede, in their arguments, that there was not a compliance with these provisions; and yet we are asked to reverse his decrees, and to grant relief, in the total absence of such compliance. Can we do so, in the very teeth of the statute, which declares that, in such conditions, the plaintiff "can not recover?" It should also be noted that, in these cases, there was a special plea, interposed in the court below, and insisted on there and here, that the complainant received her appointment in a foreign jurisdiction, and as such had no authority to maintain these suits. On this issue, was it not incumbent on the complainant, even under the act of February 5th, 1877 (Code, § 2637), to show herself entitled to decrees, by proving she had complied with its requirements?

33

[Harris v. Moore.]

In the case of *Hatchett v. Berney*, 65 Ala. 39, the court, in discussing the power of a foreign administrator, said : "While, as to suits for the recovery of the assets, the title and authority of the personal representative of the last domicile of the deceased is confined and limited to the territorial jurisdiction of the government from which they are derived, or extended only to the *residuum* after the satisfaction of the claims and rights of residents of other jurisdictions in which ancillary administration may be taken ; there is now presented a different question—whether, in the absence of a domestic administration, his title and authority may not be voluntarily recognized, and debts paid to him, or other assets surrendered ; such payment or surrender affording full protection against the claim of a domestic administrator subsequently appointed. . . . . Each State has the right and power of determining the disposition of all property having an actual *situs* within its jurisdiction, and the administration of it on the death of the owner. The personal representative of the last domicile may be left to the right and authority the general law recognizes ; or that may be enlarged, and the right and authority of a domestic personal representative may be conferred on him, so far as is deemed politic ; or all recognition of his right and authority may be withdrawn, or the terms on which he may exercise it and the validity of his acts recognized, may be prescribed.

" The statute of force when the transactions referred to in the bill occurred, authorized a foreign executor or administrator, who had obtained in any other of the United States letters' testamentary, or of administration, on the estate of a person who was not at his death an inhabitant of this State, to *maintain suits, and recover or receive property in this State*, upon condition that, before judgment or receipt of the property, a copy of his letters, duly authenticated, was recorded in the office of the judge of probate of the county in which suit was brought, or property received ; and giving bond, with two good and sufficient sureties, payable to, and approved by the judge of probate, in such amount as may be prescribed, to be determined with reference to the amount to be recovered or received, with condition to administer faithfully such recovery or property received. Before obtaining judgment, he was bound to prove a compliance with this condition ; and when there had been a compliance with the condition, the recovery of judgment, or a delivery of the property to him, was a protection to the defendant, or person delivering the property, to the extent of such judgment, or value of such property.—Code of 1876, §§ 2637–2640.

" The statute is permissive, and prohibitory. It confers on

[Harris v. Moore.]

the foreign executor, or administrator, the privilege or liberty of suing in our courts, without taking out new letters here, and the right of receiving, without suit, assets which are here situate. Each subject is embraced and dealt with by the statute; not only the privilege of suit by virtue of his original administration,—a privilege he did not have by the general law; but the right of receiving without suit assets here situate,—a right the general law recognized, when there was no domestic administration; and each is placed upon the same footing. The judgment obtained by him is a protection to the defendant, only when he has complied with the statutory condition; and the voluntary delivery of property to him, without suit, can be supported, only when there has been such compliance. Though the statute does not, in words, express a prohibition of suits, or the voluntary delivery to him of property, in the absence of a compliance with the condition; yet such is its manifest spirit and intent. It prescribes the terms, upon which he may exercise here the authority derived from a foreign jurisdiction; and to the extent to which there might be recognition of such authority, in the absence of compliance, there would be practical contravention of the legislative will."

In *Sloan v. Frothingham* (same volume, 593), it was said: "In *Hatchett v. Berney*, at the last term, it was held, that our statutes were in their terms prohibitory of the exercise of any authority in this State, by executors or administrators deriving authority from a foreign jurisdiction, and that payment made to administrators appointed in Tennessee, the domicile of the creditor, of a debt secured by mortgage on lands situate in this State, could not be sustained against the claim to foreclose, of a domestic administrator, subsequently appointed, except so far as such payments had been properly applied in payment of debts, or in making distribution. Adhering, as we are constrained to do, to that construction of the statutes, the personal representatives of Cary, deriving their appointment from a tribunal in New York, not having recorded their letters of administration, and given bond, could not have received payment of the mortgage debt, if it had been tendered to them by the mortgagor. They could not have given any discharge, or entered on the record of the mortgage the fact of its satisfaction. The power of sale in a mortgage, in the language of the statute, *is part of the security;* and while the statute declares it may be exercised by any person, or the personal representative of any person, who becomes entitled to the money secured, it is intended that only such persons as are entitled to the money, and have the capacity of giving for it valid and operative acquittances, can or shall exercise the power."—See, also, *Noonan v. Bradley*, 9 Wall. 394.

[Harris v. Moore.]

The statutory provisions under which our former rulings, noted above, were made, are, on the question under consideration, identical with those which must govern these cases. Under those rulings, while a judgment or decree in favor of a foreign administrator, recovered without performance of the statutory pre-requisites (without which the statute declares " he can not recover "), is binding and conclusive on the defendant; yet a payment of such judgment or decree will be no defense to a suit on the same demand, brought by a resident administrator. And we are asked to reverse the ·chancellor's rulings, and to render decrees here, which will place the defendants in these suits in the very category supposed above. In the absence of proof that complainant had complied in all respects with the provisions of section 2637 of the Code of 1876, it was the duty of the chancellor to dismiss the bills. He did so, and committed no error, although he may have given other reasons for it. He did what the statute required him to do, and we can not say he erred therein.

It is no answer to this argument, that the claims sued on are now barred by the statute of limitations, and that therefore the defendants are not liable to a second recovery by the resident administrator. We are declaring a rule, which must be alike applicable to all cases. A conditional right to recover can not be enforced as matter of right, without showing a compliance with the conditions precedent to the assertion of such right.

We have stated above that the act of February 5th, 1877 (Code, § 2637), is, on its face, made retrospective; applicable to suits commenced before, as well as those commenced after its enactment. Without that statute, these suits could not be maintained, no matter how meritorious the claims they severally assert. The efficacy of the retrospective feature has been assailed; but we prefer to remain uncommitted on that question, until it comes before a full bench.

Let the decrees of the chancellor be affirmed.

BRICKELL, C. J., not sitting.