[Beard v. Ryan.]

# Beard *v.* Ryan.

*Statutory Action in nature of Ejectment.*

1. *Proof of deeds ; presumption as to possession.*—While it may be a legal presumption that the owner of land has possession of the deed of his immediate vendor, no such presumption arises as to former deeds.

2. *Proof of ancient deeds, and record copies.*—Where the plaintiff deduces title under deeds more than thirty years old, which are not shown to have ever been in his possession, and the circumstances repel any suspicion of a sinister purpose in withholding the originals, record copies of such deeds may be received, on proof of diligent search by his attorney and his agent in all reasonable places of deposit, in which search plaintiff himself assisted, although he is not examined personally as to his custody of the papers, being absent in another county at the time of the trial.

3. *Same; color of title.*—A written instrument purporting to be an agreement to convey, though ineffectual as a conveyance, may constitute color of title ; and when it comes from the custody of a person having an interest in the land, is more than thirty years old, and is connected with evidence showing possession under it, it is governed by the rules which apply to the proof of ancient deeds.

4. *Statute of limitations; computation of time.*—In the computation of time necessary to perfect a bar under the statute of limitations, only the time which elapsed before the commencement of the suit can be considered.

5. *Same; continuity of possession.*—Unbroken continuity of possession is an essential element of an adverse holding, such as will ripen into a title under the statute of limitations, except where it is interrupted by mere intruders, who are ejected by a prompt resort to legal remedies.

6. *What title will support or defeat action.*—As against a mere trespasser, or one holding under him, plaintiff may recover on proof of prior possession ueder color of title and claim of ownership, and the defendant is precluded, in such case, from setting up an outstanding title with which he does not connect himself.

7. *Adverse possession by purchaser or sub-purchaser.*—When a purchaser of land, under an executory contract, is let into possession, not having paid the purchase-money, nor received a conveyance, his possession becomes adverse when he pays the purchase-money, and not before ; but, if he sells and conveys to a third person, who pays the stipulated price, and is placed in possession, the possession of such sub-purchaser is adverse to the original vendor, and will ripen into a title under the statute of limitations, although the first purchaser never paid the purchase-money, and never acquired any title.

8. *Allowing jury to take charges refused.*—All written charges, whether given or refused, and so marked (Code, § 3109), may be taken by the jury with them on their retirement.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. LEROY F. Box.

This action was brought by Samuel F. Ryan, against Thomas Beard, to recover the possession of a tract of land, which

was described in the complaint as "the northwest part (B) of fractional section seventeen (17), township seven (7), range four (4) east, containing seventy-nine (79) acres, more or less;" and was commenced on the 27th January, 1879. The defendant pleaded, "in short by consent," not guilty, and the statutes of limitation of ten and twenty years; and the cause was tried on issue joined on these pleas.

On the trial, as the bill of exceptions recites, "it was a conceded fact, that plaintiff and defendant both claimed to derive title from Arthur C. Beard, deceased," who was the father of the defendant. The plaintiff's claim of title was as follows: 1st, a patent from the United States to Hardy H. Moore, dated May 20th, 1831; 2d, a deed from Hardy H. Moore to James H. Beard, dated September 28th, 1837; 3d, a deed from James H. Beard to Arthur C. Beard, also dated September 28th, 1837; 4th, a deed from Arthur C. Beard to John M. Tate, as trustee, to secure a debt to the Branch Bank at Decatur, which was dated November 22d, 1841; 5th, a deed by said Tate, as trustee, to Hugh Henry, as a purchaser at a sale under the provisions of the deed, dated December 1st, 1842; 6th, a deed by Hugh Henry and wife to William Robinson, dated August 10th, 1848; 7th, a written instrument executed by said Robinson to Gabriel M. Moore, dated "January, 1848," which recited that he had sold the land to said Moore, and was to execute a conveyance when full payment of the purchase-money was made as therein stipulated; and, 8th, a deed executed by said Gabriel M. Moore to P. M. Bush and Samuel Finley, dated March 9th, 1850, by which his plantation (claimed by plaintiff to contain the land now sued for), with other property, was conveyed to said Bush and Finley in trust for the support of himself and his family, during the joint lives of himself and his wife; with a further provision, that, on his death, "the trust estate hereby created is to be distributed among the children of the said Gabriel and the said Joanna [his wife] according to the provisions of the statutes of descent and distribution of the State of Alabama now in force." At the time this deed was executed, Gabriel M. Moore had two children living, both of whom, as the plaintiff's evidence tended to show, were living at the time of his death in 1853. After his death, his widow (Joanna) married one John Ryan, and the plaintiff was the only child of that marriage. The plaintiff's evidence tended to show that the two children of Gabriel M. Moore died after their father, but before their mother; and he claimed by inheritance from his mother, who died before the commencement of the suit. "There was evidence, also, tending to show that said two children of Gabriel Moore died before the marriage of their mother with said John Ryan; and

other evidence tending to show that they died before their father."

The plaintiff did not produce the original deed from Hardy H. Moore to James H. Beard, above mentioned, but offered in evidence " the record of said deed from the office of the probate judge of Marshall county ; to which the defendant objected, because it did not appear, nor was it attempted to be shown by plaintiff, that the original conveyance was lost or destroyed, nor that the party offering the record had not the custody or control of the original. The court then stated, that the plaintiff must show that the original conveyance was lost or destroyed, or that he did not have the custody or control thereof. Thereupon, W. H. Norwood, one of plaintiff's attorneys, being sworn, stated to the court, that he had brought this suit as attorney for plaintiff ; that he had never seen said deed, nor ever had possession of it ; that he and said John Ryan, who was plaintiff's agent and father, and who had the legal guardianship of plaintiff's person and property during his minority, together with plaintiff, had made diligent search among all the papers of said John and Samuel F. Ryan, for said original deed, and failed to find it ; that he and said John Ryan also made diligent search among the papers in the Probate Court relating to the estate of said Gabriel Moore, and also to the estate of said Bush and Finley, trustees, and were assisted by the probate judge in making this search ; that they also made diligent search in the office of the register in chancery, among the papers relating to the settlement of said trust by said Bush and Finley, and amongst all the files where they had any reason to suppose said paper could be found, and they could not find it ; that so far as he knew, or could learn, said paper had never been in the possession of either plaintiff or his said guardian, John Ryan, and had certainly never been in his possession ; that plaintiff resided in Jackson county, and was there at the time of the trial ; and that he could not swear plaintiff did not have the custody or control of said original conveyance. On this evidence, the court allowed the record of said deed, as offered, to be read in evidence to the jury ; to which the defendant excepted."

Record copies of the deeds from James H. to Arthur C. Beard, from Arthur C. Beard to John M. Tate, from said Tate to Hugh Henry, and from said Henry and wife to William Robinson, were admitted as evidence, without the production of the originals, on the same proof of search by the same witnesses ; and the defendant excepted to their admission. The written agreement above mentioned, by which William Robinson recited that he had sold the land sued for, with other lands, to Gabriel M. Moore, and was to execute a conveyance when

he had received payment of the purchase-money as stipulated, was admitted in evidence by the court, against the objection of the defendant, which did not specify any particular ground of objection ; and the defendant excepted to its admission. The defendant objected, also, to the admission of the deed from Gabriel M. Moore to Bush and Finley as trustees, "because it was not recorded and acknowledged within twelve months so as to be self-proving, and because its execution was not proved by the attesting witnesses ;" and he duly excepted to the overruling of his objections.

"There was evidence tending to show that the land sued for once belonged to William Robinson, and was conveyed by him to Gabriel M. Moore, who had and held possession until after the execution of said deed to Bush and Finley as trustees; and that said trustees then held possession until 1856, when they turned over the possession of the lands conveyed (with the land now in suit) to said John Ryan, who held possession, for and in the name of his infant son, the plaintiff, up to the year 1872. Evidence was introduced by the defendant, tending to show that said Bush and Finley, trustees, while they had possession and control of the lands conveyed to them by said Moore, did not have, nor claim to have, possession of the land sued for under said deed, and it was not claimed as part of said land, but they rented said land from said Arthur C. Beard, from about 1850 to 1860, or thereabout, and paid him rent therefor, the said Beard then claiming said land, and exercising acts of ownership over the same. There was evidence, also, on the part of the defendant, tending to show that said Arthur C. Beard had possession of the land sued for, as far back as 1848, claiming it as his own, and exercising acts of ownership over it; that his possession continued up to about the commencement of the late war ; and that the possession of said Moore, of said trustees, and of said John Ryan, did not include the land in suit, but a large body of land north of it. The evidence for the defendant tended to show, also, that said Arthur C. Beard took possession of the land sued for, in 1872, or in the early part of 1873. The plaintiff introduced evidence in rebuttal, tending to show that the land in suit lies north of a certain fence, now dividing the lands of said Gabriel M. Moore from the adjoining plantation, which once belonged to said A. C. Beard, and that the land south of this fence was the land occupied by said Beard, and leased by him to said trustees. The plaintiff introduced, also, evidence tending to show that the purchase-money mentioned in the said written obligation of William Robinson, as above set out, had been paid by his retention of certain moneys in his hands as guardian of said Gabriel M. Moore. The record of the settlement of his guard-

[Beard v. Ryan.]

ianship with said trustees, after crediting him with said purchase-money, [showed] there was still a balance due his ward's estate."

The court gave the following (with other) charges, on the written request of the plaintiff:

"1. The ten years possession which will give title under the statute of limitations, means ten years before suit brought; the time elapsing after suit brought, counts nothing.

"2. This suit being brought on the 27th January, 1879, the ten years adverse possession of Beard, or of those from whom he claims, must be ten years before that day: the time elapsing since that date, does not count in considering the statute of limitations.

"3. The ten years which will give title, must be continuous before suit brought: if, during the ten years, there was any time when the claimant had no possession, then all the time before that gap can not be counted.

"4. If the jury find that the plaintiff had possession, by his tenant, under claim of title, for five years or more prior to Beard's possession; and that, while he was so possessed, Arthur C. Beard, by his tenants, entered upon said land, and took possession; and that he and those claiming under him had no written title, and had not had prior possession ten years before suit brought, or before Ryan's possession began, then they should find for the plaintiff.

"5. Although the purchaser of land under an executory contract, not having paid the purchase-money, nor received a conveyance, does not hold adversely to his vendor; yet, if he sells and conveys to a third person, who pays the stipulated price, is let into possession, and receives a conveyance of the title in fee simple, such sub-purchaser may hold adversely to the original vendor, and may acquire a title under such adverse possession and the statute of limitations. Therefore, applying this principle to the case at bar, if the jury believe, from the evidence, that Gabriel M. Moore purchased the land in controversy from William Robinson, on the 1st January, 1848, under the executory contract submitted in evidence, and went into possession of the land in 1848 under said contract, without paying the purchase-money; and if they further find, from the evidence, that said Gabriel Moore executed and delivered, in 1850, to said Bush and Finley as trustees, the deed of gift for the benefit of his wife and children, as is in evidence on this trial; and that the land sued for is embraced in the lands conveyed by said deed; and that said trustees went into the possession of the land sued for under said deed, and so continued in possession until the death of said Moore, and up to the time of the death of his wife and children; then the

possession of said trustees became adverse to the title of said Robinson, whether the purchase-money was paid or not.

"6. A purchaser of land, who is let into possession under an executory contract, without a deed, becomes an adverse holder as soon as he pays the purchase-money; and if his possession continues, uninterrupted, for ten years, he may maintain or defend an action of ejectment. And in applying this principle to the case at bar, if the jury believe, from the evidence, that Gabriel M. Moore purchased the land now sued for from William Robinson in 1848, and afterwards paid the purchase-money, or that it was paid by his said trustees, either in his life time or after his death; then the possession of said land became adverse from the time of such payment.

"11. Prior possession, under *bona fide* claim of title, is, of itself, sufficient to entitle the plaintiff in ejectment to recover against an intruder, or trespasser; and a defendant thus situated can not set up an outstanding title in a third person to defeat a recovery, without connecting himself with such outstanding title."

The defendant excepted to each of these charges as given, and also to the refusal of two charges asked by him in writing, which were as follows: (1.) "The jury can look to the fact that the trustees, Bush and Finley, paid Beard rent for said land while they held Moore's property as such trustees, to ascertain whether they held the land adversely to him; and if they paid him rent, that was not an adverse holding against him." (2.) "If the jury find, from the evidence, that A. C. Beard held possession of the land in 1848, and from that time up to about the beginning of the late war, and that plaintiff, or those under whom he claims, entered into the possession of the land without title thereto; then said Beard had the right to enter thereon, and take the possession of the same, if he could do so without committing a breach of the peace; and if said entry was under claim of title, connected with such possession of said Beard before the war, the plaintiff can not recover simply by proof of his possession prior to the entry of said Beard in 1872, or 1873."

Another charge asked by plaintiff, which was written on the same sheet of paper with the several charges given, was refused by the court, and was marked "*Refused*," and "a pencil was run across it a few times by the court;" but the court allowed the jury to take it with them on their retirement, and to this the defendant excepted.

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

HAMILL & LUSK, and CABANISS & WARD, for appellant.

W. II. Norwood, and J. E. Brown, *contra.*

SOMERVILLE, J.—The only objection which seems to have been urged to the recorded copies of the first four deeds, as proved by the records of the Probate Court, offered in evidence by the plaintiff, was the failure of the plaintiff to show that the original conveyances had been lost or destroyed, or that he had not the custody or control of them.—Code, 1876, § 2154. All of these deeds are shown to have been ancient documents more than thirty years of age—two of them dating as far back as forty and fifty years. The circumstances of the present case furnish no shadow of suspicion that the originals could have been withheld for a sinister purpose. It is shown by the attorney of the plaintiff, who testifies as a witness, that the plaintiff, the plaintiff's agent and former trustee of the property sued for, and the witness himself had all in good faith made a search for these documents, which seems to have exhausted all proper sources of information, such search including an examination among the private papers of the parties. These facts are not denied in argument. The main point of objection urged is the failure of the plaintiff to be present at the trial, and affirmatively make oath to the fact that he himself did not have the control and custody of the original deeds. This argument is based on the false assumption, that every owner of land is presumed to be in possession of every ancient muniment of his title. The legal presumption, it is true, may be, that the deed of his immediate vendor was delivered to him, and remains in his possession ; but no such presumption obtains as to other muniments of title. The plaintiff's absence in another county at the time of the trial, the fact that he had aided in the search made, and the other circumstances of this case, are sufficient to rebut any unfavorable inferences to be drawn from the absence of the plaintiff's testimony as to the matter in question. The records of these deeds were, in our judgment, properly admitted.

The written instrument bearing date in January, 1848, purporting to be an agreement to convey the lands to Gabriel Moore, was certainly admissible. It was an ancient document over thirty years of age, and came from the custody of one having an interest in the property, to which it had reference, at least, in part. It is connected, moreover, with other evidence showing a possession under it by the vendee. It, therefore, proves itself, and must be taken as genuine. 1 Greenl. Ev. § 144; *Bernstein v. Humes,* 75 Ala. 241; *Beall v. Dearing,* 7 Ala. 124. Though not attested by witnesses, or conveying the legal title, this instrument showed color of title. The same is true of the deed from Gabriel Moore to

Finley and Bush, trustees, which constituted good color of title to the grantees claiming and occupying under it.—*Ryan v. Kilpatrick*, 66 Ala. 332–337.

The court did not err in charging the jury, that the ten years of adverse possession, which, under the operation of our statute of limitations, will mature into a good title, means ten years before the commencement of the suit, and that, in this estimate, the time which elapses after suit brought is not counted or included.

It is equally true, that unbroken continuity of possession is an essential element of such adverse holding, except where it is interrupted by mere intruders, who are evicted by a prompt resort to legal remedies within a reasonable time.—*Ladd v. Dubroka*, 61 Ala. 25 ; *Bell v. Denson*, 56 Ala. 444.

If the defendant had no title, acquired either by deed, or by adverse possession for the period of ten years, the possession of the plaintiff, which is shown to have been accompanied by color of title and claim of ownership, would be sufficient to warrant a recovery against a mere trespasser who had intruded upon the plaintiff's possession, such trespasser, or one holding under him, being precluded from setting up an outstanding title with which he in no way connects himself.— *Wilson v. Glenn*, 68 Ala. 383 ; *Dothard v. Denson*, 72 Ala. 511 ; Trial of Title to Land (Sedgw. & Wait), §§ 718–720.

The first four charges, and the eleventh charge, given at the request of the plaintiff, in substance only assert the foregoing propositions.

The principles announced in the fifth and sixth charges requested by the plaintiff are clearly sustained by the past decisions of this court.—*The State v. Conner*, 69 Ala. 212 ; *Tayloe v. Dugger*, 66 Ala. 444. And the other charges given at plaintiffs' request are obviously free from objection.

The action of the court in allowing the charge which was indorsed in writing as " refused " to go to the jury, in connection with the other charges that were given, was entirely free from criticism. The statute authorizes all written charges, whether those that are " given " or those that are " refused," to be taken by the jury with them in their retirement. It is often just as important for the jury to clearly understand what the law *is not* as to know what it *is*.—Code, 1876, § 3109 ; *Miller v. Hampton*, 37 Ala. 342.

The two charges requested by the defendant were properly refused by the court. The first erroneously assumes, as a proved fact, that Bush and Finley paid rent to Beard on the land in controversy, without submitting to the jury the credibility of the testimony relied on in support of such alleged fact. The second is misleading, if not erroneous, in omitting the

[Wharton v. Thomason.]

element of hostility or adverseness in the possession of Beard, without which such possession may have been permissive and subordinate to the real or true title.

We find no error in the record, and the judgment must be affirmed.