PITTMAN, Judge.
Wendell W. Edgil and Theresa L. Edgil appeal from an adverse judgment entered in an action involving a dispute regarding the ownership of a strip of land (“the disputed strip”) located in the south half of the northwest quarter of the northeast quarter of Section 22, Township 13 South, Range 12 West, in Fayette County (“the half-quarter-quarter section”). We affirm.
In 1980, W.R. Spann (“W.R.”), who was the father of Billy Mack Spann (“Billy Mack”) and Benny Spann (“Benny”) and the then owner of record title to the half-quarter-quarter section, deeded a parcel (“the 350-foot-wide parcel”) of the half-quarter-quarter section to Benny and Barbara Spann (“Barbara”). The 350-foot-wide parcel was bounded on the west by the western boundary line of the half-quarter-quarter section and was bounded on the east (“the eastern boundary line of the 350-foot>-wide parcel”) by a line that was approximately 350 feet east of, and parallel to, the western boundary line of the half-quarter-quarter section. The disputed strip, which is located within the 350-foot-wide parcel, is bounded on the east by the eastern boundary line of the *1246 350-foot-wide parcel and bounded on the west (“the western boundary line of the disputed strip”) by a line that is approximately 30 feet west of, and parallel to, the eastern boundary line of the 350-foot-wide parcel.
In 1985, W.R. deeded a parcel consisting of all the half-quarter-quarter section except the 350-foot-wide parcel to Billy Mack.[1] In 1992, Benny and Barbara deeded to David Neal Smith a parcel of land located north of the 350-foot-wide parcel (“Smith’s parcel”) and a 30-foob-wide easement (“the easement”) across the 350-foot-wide parcel for ingress to, and egress from, Smith’s parcel. The eastern and western boundary lines of the easement coincide with the eastern and western boundary lines of the disputed strip. Later in 1992, Barbara executed a quitclaim deed conveying any interest she might own in the portion of the 350-foot-wide parcel located west of the disputed strip to Benny.[2] On May 3, 1999, Benny deeded the portion of the 350-foot-wide parcel located west of the disputed strip to the Edgils. In 2005, Smith deeded his parcel and the easement to Joseph H. Watkins and Paula Watkins.
Sometime in 2007, a dispute arose between the Edgils and Billy Mack regarding who owned the disputed strip. The evidence at trial was in conflict regarding who had been in possession of the disputed strip after the Edgils had acquired record title to the portion of the 350-foob-wide parcel located west of the disputed strip on May 3,1999.
On August 7, 2007, Billy Mack sued the Edgils, alleging that he owned the disputed strip, stating claims of ejectment and trespass, and seeking possession of the disputed strip and damages. The Edgils answered the complaint with a qualified general denial but did not assert a counterclaim. On January 8, 2009, Billy Mack filed an amendment to his complaint that added a claim asserting that he had adversely possessed the disputed strip. The Edgils answered the amendment to Billy Mack’s complaint with a qualified general denial but, again, did not assert a counterclaim. On January 27, 2009, Benny executed a quitclaim deed conveying any interest he might own in the disputed strip to Billy Mack; however, that quitclaim deed was not recorded at that time. In December 2009, with the leave of the trial court, Billy Mack filed an amendment to his complaint adding the Watkinses as defendants in the action.[3]
On June 28, 2010, the Edgils filed a third-party complaint against Benny, which stated a claim seeking reformation of their deed from Benny to add the legal description of the disputed strip to the legal description of the land conveyed by that deed and a claim seeking a determination that they had adversely possessed the disputed strip. Benny answered the third-party complaint with a general denial. In August 2010, the Edgils filed a third-party complaint against Barbara, asserting the same claims the Edgils had asserted in their third-party complaint against Benny. Barbara answered the third-party complaint with a general denial.
*1247 In January 2011, Barbara executed a quitclaim deed conveying any interest she might own in the disputed strip to Billy Mack, and both that quitclaim deed and the January 2009 quitclaim deed executed by Benny were recorded. Also in January 2011, Billy Mack filed an amendment to his complaint adding a claim seeking a determination that he owned the disputed strip by virtue of his owning .record title to it.
Following a bench trial at which it received evidence ore tenus, the trial court entered a judgment finding in favor of Billy Mack with respect to his claims against the Edgils, granting Billy Mack possession of the disputed strip but denying him any damages, finding in favor of Benny and Barbara with respect to the Edgils’ third-party claims, determining that the boundary line separating Billy Mack’s land from the Edgils’ land was the western boundary line of the disputed strip, and determining that the disputed strip was subject to the Watkinses’ easement. As its rationale for ruling against the Edgils with respect to their adverse-possession claim,[4] the trial court stated:
“The fact that the deed from Benny to the Edgils was executed and delivered in 1999 and Billy Mack filed this action against the Edgils [on] August 7, 2007, is dispositive. The Edgils cannot acquire title to the disputed area by adverse possession because they had been in possession for less than 10 years before suit was filed. Whiddon v. White, [285 Ala. 109,] 22[9] So.2d 498 (Ala. 1969). The Edgils did not and could not offer evidence of ‘tacking’ as their predecessor, Benny, was an adverse party. In the case of [Center Line ] Enterprises, Inc. v. Washington, 465 So.2d 1129 (Ala.l985)[,] the Court found that the claim of adverse possession failed because the claimants, as the Edgils in this case, had been in possession for only 8 years, not the required 10, before suit was filed.”
The Edgils timely filed a Rule 59(e), Ala. R. Civ. P., motion asserting that the trial court had erred in concluding, as a matter of law, that they could not prevail on their adverse-possession claim because less than 10 years had elapsed between the date when they allegedly began adversely possessing the disputed strip in May 1999 and August 7, 2007, the date Billy Mack filed this action. According to the Edgils, the period to be considered in determining whether they had adversely possessed the disputed strip continued to run until they filed their third-party complaint stating an adverse-possession claim against Benny on June 28, 2010, and, they contended, the period of their alleged adverse possession of the disputed strip therefore exceeded the requisite 10-year period. The Edgils’ Rule 59(e) motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., and the Edgils then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, the sole issue presented by the Edgils for our review is whether the trial court erred in concluding that the period to be considered in determining whether the Edgils adversely possessed the disputed strip stopped running when Benny Mack filed this action on August 7, 2007. Because the ruling of the trial court challenged by the Edgils is a ruling re *1248 garding a question of law, we review that ruling de novo. See Ex parte City of Brundidge, 897 So.2d 1129, 1131 (Ala.2004) (“A ruling on a question of law carries no presumption of correctness, and appellate review is de novo.”).
As they did in their Rule 59(e) motion, the Edgils argue to this court that the period to be considered in determining whether they had adversely possessed the disputed strip continued to run until they filed their third-party complaint stating an adverse-possession claim against Benny rather than stopping when Billy Mack filed this action on August 7, 2007. The Edgils have not cited any Alabama law squarely supporting their argument. Moreover, although they have challenged the trial court’s reliance on Whiddon v. White, 285 Ala. 109, 229 So.2d 498 (1969), they have not challenged the trial court’s reliance on Center Line Enterprises, Inc. v. Washington, 465 So.2d 1129 (Ala.1985).
In Center Line, Aroe Washington (“Aroe”) had mortgaged his undivided 2/9 interest in a parcel of real property (“the property”) on which he and his wife lived. Thereafter, in 1971, Aroe died intestate, and, in June 1972, his widow moved from the property and never again possessed it or made any claim to it. In 1973, the mortgagee foreclosed the mortgage and apparently purchased Aroe’s undivided 2/9 interest in the property at the foreclosure sale. Apparently, the mortgagee then assigned its interest in the property to an assignee sometime before January 24, 1974, the date the assignee contracted to sell its interest in the property to Curtis G. Lockett. In 1976 or 1977, Lockett took possession of the property, which had been abandoned since June 1972. In 1980, the assignee of the mortgagee deeded its interest in the property to Lockett, and, later that same year, Lockett deeded his interest in the property to Center Line Enterprises, Inc. (“Center Line”).[5] However, Lockett remained in possession of the property. On April 20, 1982, the owners of the other undivided 7/9 interest in the property (“the plaintiffs”) brought a sale-for-division action against Lockett. Center Line later became a defendant as well. Center Line contended, among other things, that it had acquired the plaintiffs’ interests in the property through Lockett’s adverse possession of the property. After the trial court ordered the property sold at public auction and the proceeds divided among the plaintiffs and Center Line, Center Line appealed to the supreme court. On appeal, Center Line again contended, among other things, that it had acquired the plaintiffs’ interests in the property through Lockett’s adverse possession of the property. Rejecting that contention, the supreme court stated:
“[Center Line] also claimed title by adverse possession through the alleged adverse possession of its predecessor, Curtis G. Lockett. [Center Line], however, introduced no evidence of adverse possession from the time of the original possession of Aroe Washington. Moreover, the evidence shows that [Lockett] did not contract to purchase the property until January 24, 1974. This action was filed by the plaintiffs on April 20, 1982, which established as less than 10 years the period for which [Lockett] claimed to have been in adverse possession. Cf. Reed v. Ray, 409 So.2d 814 (Ala.1982) (adverse actual possession requires occupancy that is clear, definite, positive, notorious, continuous, and exclusive for the requisite period).”
*1249 Center Line, 465 So.2d at 1130 (emphasis added).
Beard v. Ryan, 78 Ala. 37 (1884), also supports the ruling of the trial court in the present case. In Beard, the plaintiff, who claimed to be the owner of record title to a parcel of land, brought an ejectment action against the defendant, who was in possession of the parcel. As a defense, the defendant asserted that he had adversely possessed the parcel for 10 years and that, therefore, the plaintiff was not entitled to possession of the parcel. The action was tried before a jury. At the request of the plaintiff and over the objection of the defendant, the trial court gave the following charges, among others:
“ ‘1. The ten years possession which will give title under the statute of limitations, means ten years before suit [is] brought; the time lapsing after suit [is] brought, counts nothing.
“ ‘2. This suit being brought on the 27th January, 1879, the ten years adverse possession of [the defendant], or of those from whom he claims must be ten years before that day; the time elapsing since that date, does not count in considering the statute of limitations.’ ”
78 Ala. at 41 (emphasis added). After the jury’s verdict resulted in the entry of a judgment in favor of the plaintiff, the defendant appealed to the supreme court. Among other things, the defendant argued on appeal that the trial court had erred in giving the two jury charges quoted above. Rejecting that argument, the supreme court stated:
“The court did not err in charging the jury, that the ten years of adverse possession, which, under the operation of our statute of limitations, will mature into a good title, means ten years before the commencement of the suit, and that, in this estimate, the time which elapses after suit [zs ] brought is not counted or included.”
78 Ala. at 44 (emphasis added).
Based on the holdings in Center Line, supra, and Beard, supra, we conclude that the trial court in the present case did not err in concluding that Billy Mack’s filing of this action on August 7, 2007, stopped the running of the period to be considered in determining whether the Edgils had adversely possessed the disputed strip. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. The parcel W.R. deeded to Billy Mack abutted the eastern boundary line of the 350-foot-wide parcel.

. The distance between the eastern and western boundary lines of the portion of the 350-foot-wide parcel located west of the disputed strip is approximately 320 feet.

.At trial, all the parties conceded that the disputed strip was subject to the easement, which the Watkinses had acquired from Smith in 2005.

. The Edgils had pleaded an adverse-possession claim against Benny and Barbara in the Edgils' third-party complaints. However, they had not pleaded a counterclaim asserting an adverse-possession claim against Billy Mack. Nonetheless, the record indicates that such a claim was tried by the implied consent of the parties pursuant to Rule 15(b), Ala. R. Civ. P.

. Footnote 1 of the opinion in Center Line implies that Lockett had some kind of relationship with Center Line.